Craig E. Stewart (State Bar No.129530)
cestewart@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:      415-626-3939
Facsimile:      415-875-5700

Darren K. Cottriel (State Bar No. 184731)
dcottriel@jonesday.com
Ann T. Rossum (State Bar No. 281236
atrossum@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone:      949.553.7548
Facsimile:      949.553.7539

Attorneys for Defendants
THE GILLETTE COMPANY and
THE PROCTER & GAMBLE CO.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| RENEE PUNIAN, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>     v.<br><br>THE GILLETTE COMPANY and THE PROCTER & GAMBLE COMPANY,<br><br>          Defendant. | **Case No. 5:14-cv-05028-LHK**<br><br>**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:      January 28, 2016<br>Time:      1:30 p.m.<br>Place:      Courtroom 8 – 4th Floor |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ........................................................................... 1

RELIEF SOUGHT .......................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

INTRODUCTION ........................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .............................................................. 3

BACKGROUND ............................................................................................................. 3

    A.    Plaintiff's Factual Allegations. ..................................................................... 3

    B.    Ruling on Motion to Dismiss Amended Complaint................................... 4

    C.    The Second Amended Complaint. ............................................................... 5

ARGUMENT ................................................................................................................... 6

I.     LEGAL STANDARD. ......................................................................................... 6

II.    PLAINTIFF DOES NOT ALLEGE A VALID FALSE ADVERTISING CLAIM UNDER THE UCL FRAUDULENT PRONG, THE FAL OR THE CLRA...................... 7

    A.    The Complaint Does Not Allege A Valid Non-Disclosure Claim. ......................... 7

        1.    Plaintiff alleges no facts showing that Duracell batteries were defective. ...................................................................................... 7

        2.    Plaintiff has not cured her failure to allege that Duracell was aware of any defect. ...................................................................... 11

    B.    The Complaint Does Not Allege Any Actionable Affirmative Misrepresentations. ...................................................................................... 15

III.   PLAINTIFF'S UCL CLAIMS FOR UNLAWFUL AND UNFAIR CONDUCT ALSO FAIL. ......................................................................................................... 18

IV.   PLAINTIFF HAS NOT ALLEGED A VALID CLAIM FOR "UNJUST ENRICHMENT." ................................................................................................. 19

V.    PLAINTIFF'S WARRANTY CLAIM IS MERITLESS. ................................... 19

CONCLUSION ............................................................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mot. to Dismiss Second Amended Compl.
No. 14-cv-05028-LHK

# <u>TABLE OF AUTHORITIES</u>

**Page**

Cases

*Aleksick v. 7–Eleven, Inc.,*
205 Cal. App. 4th 1176 (2012) ............................................. 18

*Am. Suzuki Motor Corp. v. Superior Court,*
37 Cal. App. 4th 1291 (1995) ............................................. 20

*Anunziato v. eMachines, Inc.,*
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................. 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................. 6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555 (2007) .................................................... 6

*Berenblat v. Apple, Inc.,*
No. 08-4969 JF (PVT), 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ..................................... 12

*Berryman v. Merit Prop. Mgmt., Inc.,*
152 Cal. App. 4th 1544 (2007) ........................................... 7

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.,*
727 F.3d 917 (9th Cir. 2013) ............................................. 14

*Bly–Magee v. California,*
236 F.3d 1014 (9th Cir. 2001) ............................................ 8

*Brothers v. Hewlett-Packard Co.,*
No. C-06-02254 RMW, 2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) ................................... 18

*Bryant v. Mattel, Inc.,*
No. CV 04-9049 DOC RNBX, 2010 WL 3705668 (C.D. Cal. Aug. 2, 2010) ......................... 14

*Chacanaca v. Quaker Oats Co.,*
752 F. Supp. 2d 1111 (N.D. Cal. 2010) .............................. 6

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
173 F.3d 725 (9th Cir. 1999) ............................................. 17

*Collins v. eMachines, Inc.,*
202 Cal. App. 4th 249 (2011) ............................................. 7

*Consumer Advocates v. Echostar Satellite Corp,*
113 Cal. App. 4th 1351 (2003) ........................................... 17

Mot. to Dismiss Second Amended Compl.
No. 14-cv-05028-LHK

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.,*
   911 F.2d 242 (9th Cir. 1990) ................................................................................. 18

*Daugherty v. Am. Honda Motor Co.,*
   144 Cal. App. 4th 824 (2006) ................................................................................. 7

*Donohue v. Apple, Inc.,*
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ................................................................... 10

*Elias v. Hewlett-Packard Co.,*
   950 F. Supp. 2d 1123 (N.D. Cal. 2013) ................................................................. 17

*Elias v. Hewlett-Packard Co.,*
   No. 12-CV-00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ...................... 9

*Grodzitsky v. Am. Honda Motor Co.,*
   No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) .......... 13

*Herremans v. BMW of N. Am., LLC,*
   No. CV 14-02363 MMM PJWX, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ........... 10, 12, 13

*Hill v. Roll Int'l Corp.,*
   195 Cal. App. 4th 1295 (2011) .............................................................................. 19

*In re GlenFed, Inc. Sec. Litig.,*
   42 F.3d 1541 (9th Cir. 1994) ................................................................................. 8

*In re iPhone Application Litig.,*
   6 F. Supp. 2d 1004 (N.D. Cal. 2013) ..................................................................... 17

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.,*
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) .................................................................. 14, 18

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) ............................................................................... 7, 17

*Keith v. Buchanan,* 173 Cal. App. 3d 13 (1985) ............................................................. 19

*Kowalsky v. Hewlett-Packard Co.,*
   771 F. Supp. 2d 1156 (N.D. Cal. 2011) ................................................................. 6

*Kowalsky v. Hewlett-Packard Co.,*
   No. 10-CV-02176-LHK, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) ................. 10

*Krouch v. Wal-Mart Stores, Inc.,*
   No. 12-CV-02217-YGR, 2014 WL 5463333 (N.D. Cal. Oct. 28, 2014) ................. 17

*Long v. Hewlett-Packard Co.,*
   No. C 06-02816 JW, 2007 WL 2994812 (N.D. Cal. July 27, 2007) ....................... 18

- iii -

*MacDonald v. Ford Motor Co.*,
  37 F. Supp. 3d 1087 (N.D. Cal. 2014) ........................................................................ 14

*Morici v. Hashfast Technologies LLC*,
  No. 5:14-CV-00087-EJD, 2015 WL 906005 (N.D. Cal. Feb. 27, 2015) ...................... 8

*Neu v. Terminix Int'l, Inc.*,
  No. 07-cv-6472, 2008 WL 2951390 (N.D. Cal. July 24, 2008) .................................. 6

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................. 12, 17

*Rice v. Sunbeam*,
  No. CV 12-7923-CAS-(AJWx), 2013 WL 146270 (C.D. Cal. Jan. 7, 2013) ........... 13

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ................................................................................. 17

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ................................................................................... 6

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ................................................................................... 16

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................................... 6

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ................................................................................. 10

*Wood v. Motorola Mobility, Inc.*,
  No. 11-cv-04409, 2012 WL 892166 (N.D. Cal. Mar. 14, 2012) ............................... 6

Rules

Fed. R. Civ. P. 9(b) ........................................................................................................ 6, 7

Mot. to Dismiss Second Amended Compl.
No. 14-cv-05028-LHK

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on January 28, 2016, at 1:30 p.m., or as soon thereafter as the matter may be heard, defendants The Gillette Company and The Procter & Gamble Co. (referred to collectively herein as "Duracell")[1] will and hereby do move to dismiss plaintiff's Second Amended Complaint under Fed. R. Civ. P. 12(b)(6).

**RELIEF SOUGHT**

Dismissal in defendants' favor on all claims.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Duracell provides a 10-year power preserve warranty for batteries in storage to cover the possibility that its batteries may fail. In this lawsuit, plaintiff is trying to turn that warranty into a tort, and to claim that alleged leakage in *some* batteries means *all* Duracell batteries are defective. Plaintiff's claim is meritless. If it were accepted, virtually every manufacturer of a consumer product could be sued for false advertising—except perhaps manufacturers whose manufacturing and distribution process has achieved such a state of perfection that no units of their product line ever fail prematurely.

Plaintiff will argue that she is not seeking to open the litigation floodgates in that manner, that her claim is limited to products that are actually defective. But that is exactly the problem. Her complaint is devoid of any allegations showing any defect in Duracell batteries. She relies on the alleged fact that some unquantified fraction of Duracell batteries leaked, as supposedly evidenced by a handful of anonymous and unsubstantiated postings plaintiff has found on the internet. Plaintiff has done nothing to verify the accuracy of those postings, none of which provides any basis in any event for identifying the cause of any leakage, let alone shows that it resulted from a systematic product defect. Nor do any of her other allegations—such as her citation to patent filings from 15 years and longer ago—show the existence of any defect. At

---

[1] Duracell is a brand name of batteries sold by The Gillette Company, which is a subsidiary of Procter & Gamble. For simplicity's sake, this motion uses the brand name to refer to the two defendant companies.

best, her allegations show only that, like any other mass-produced product, some Duracell batteries may fail prematurely from any of a variety of causes unrelated to any systematic product defect. The possibility of such failure is precisely why the warranty exists. Indeed, there is no other inference that can be drawn from the existence of the warranty. Allowing plaintiff (whose batteries did *not* fail) to bring this lawsuit would be to allow wholesale evasion of that warranty and of the restrictions warranty law imposes. The Court should not countenance that result.

The absence of any product defect is the threshold reason why plaintiff's claims should be rejected. Plaintiff has cited no case—and we are aware of none—in which a manufacturer has been found to have a duty to disclose in the absence of an actual, identified product defect. And plaintiff cannot hide behind any purported inability to allege facts showing such a defect. Plaintiff and her counsel could have bought Duracell batteries almost anywhere and had them tested and analyzed to determine whether they are indeed defective. She needed no discovery from Duracell to do that. Her failure to do so—and her consequent failure to allege any facts showing a defect—requires that her complaint be dismissed, this time with prejudice.

Plaintiff has also failed to cure the deficiency that led this Court to dismiss her previous complaint. She has now added a new section to her complaint in which she attempts to show that Duracell knew of the defect. Of course, it is impossible to know of a defect that does not exist. But, even assuming that plaintiff had shown a defect in the first place, none of what she alleges shows that Duracell knew about it. She mostly relies on the same consumer comments to which she referred in her previous complaint. But those comments show, at best, only that some customers complained, not that the complaints were valid, or that Duracell concluded from them that its batteries were defective. And plaintiff's vague allegations about internal testing and patent filings from 15 years or more ago are likewise insufficient to show that Duracell knew that any product defect existed, let alone one systematically affecting all of its batteries.

In short, after two attempts to do so, plaintiff has failed to allege facts satisfying even the most basic prerequisites to her suit. This Court should dismiss her entire complaint with prejudice.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Has plaintiff stated a valid claim of non-disclosure, when she does not allege facts showing the existence of any defect or that defendants were aware of any defect?

2.      Has plaintiff stated a valid claim of affirmative misrepresentation, when her complaint identifies no allegedly false or misleading affirmative statement?

3.      Has plaintiff stated a valid separate claim of unjust enrichment?

4.      Has plaintiff stated a valid claim for breach of the implied warranty of fitness for a particular purpose, when she does not allege any facts showing that she had a particular purpose for Duracell batteries different from the ordinary purposes for which batteries are used?

**BACKGROUND**

**A.      Plaintiff's Factual Allegations.**

With the exception of several new paragraphs purportedly addressed to Duracell's alleged knowledge (discussed below), the underlying factual allegations in the Second Amended Complaint ("SAC") remain the same as in plaintiff's Amended Complaint.

Plaintiff brings this case on behalf of an alleged class of Duracell CopperTop AA & AAA battery purchasers in California.  She asserts that Duracell misled consumers by not disclosing that "Duracell Batteries leak when not in use and the leakage can damage any device that the batteries are stored in."  ECF No. 46 ("SAC"), ¶ 21.  She alleges that "[n]owhere on the packaging of the Duracell Batteries is any disclosure that the batteries may leak when used or stored in a normal and expected manner." *Id.* ¶ 20.

To support her assertion that Duracell had a duty to disclose this information, plaintiff refers to Duracell's Duralock Power Preserve statement on the battery packaging that the batteries are "Guaranteed for 10 Years In Storage."  She alleges that this statement "affirmatively represent[ed] the date the battery is guaranteed not to fail." *Id.* ¶ 19.  She claims that, based on this guarantee, and the absence of any other disclosure, "a reasonable consumer would likely be misled into believing that Duracell Coppertop batteries with Duralock will last for 10 years without leakage." *Id.* ¶ 22.

Although the warranty language on which she relies is expressly limited to preservation of the battery's power while in ***storage***, plaintiff relies on alleged leakage occurring during ***use*** of the batteries. *See, e.g.*, SAC ¶ 2 (referring to leakage occurring during "intended use"); *id.* ¶ 20 (alleging that the batteries "leak even when used in a normal and expected manner").

Plaintiff alleges that she has purchased Duracell batteries "at various times for more than four years." *Id.* ¶ 42. She claims that she saw the package label, and heard or saw other advertising regarding the Duralock 10-year guarantee, and "believed that the Duracell Batteries would not fail for ten years." *Id.* ¶ 43. She further asserts that she "did not know that the Duracell Batteries, despite their premium price, could leak even if used as intended"—again ignoring that the Duralock guarantee is addressed to batteries in storage, not in use. *Id.*

She does not allege that any of the batteries she purchased leaked or otherwise failed during the warranty period. Nor does she allege that Duracell fails to fully honor its warranties in the event that any of its batteries leak or fail to perform. Her sole claim of injury is that, had she been informed that Duracell batteries allegedly can leak in normal usage, she would have opted to buy a lower-priced battery from a competitor. *Id.* ¶ 23.

Based on these allegations, plaintiff asserts claims for violation of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act. She also alleges separate claims for unjust enrichment and breach of the implied warranty of fitness for a particular purpose.

**B.      Ruling on Motion to Dismiss Amended Complaint.**

On August 20, 2015, this Court granted with leave to amend Duracell's motion to dismiss the Amended Complaint. ECF No. 43 ("Order"). With respect to the UCL, FAL and CLRA claims, the Court ruled that plaintiff's nondisclosure claim requires that Duracell had knowledge of the alleged defect either at the time of sale or when the alleged misrepresentation was made. Order, pp. 17-18, 22-23. The Court concluded, however, that plaintiff had not alleged facts showing that Duracell had such knowledge. *Id.* at 19-24. The Court likewise dismissed plaintiff's unjust enrichment claim on the ground that it relied on the same conduct as the UCL, FLA and CLRA claims and thus failed along with those claims. *Id.* at 24-25. And the Court

Mot. to Dismiss  Second Amended Compl.
No. 14-cv-05028-LHK

dismissed plaintiff's breach of warranty claim on the ground the plaintiff had not alleged facts showing that she had any particular purpose in using Duracell batteries different from the ordinary purposes for which consumers use the batteries. Nor had plaintiff alleged that Duracell knew of any such purpose, that plaintiff was relying on Duracell to furnish goods for her particular purpose, or that Duracell knew plaintiff was so relying. *Id.* at 26-27.

Because plaintiff's failure to alleged facts showing knowledge of any defect was by itself fatal to plaintiff's UCL, FAL, CLRA and unjust enrichment claims, the Court did not reach Duracell's other grounds for dismissal of those claims, including that plaintiff had failed to allege facts showing that there was any defect to disclose in the first place. *See id.* at 17.[2]

## C.     The Second Amended Complaint.

In response to the Court's Order giving her another chance to fix the deficiencies in her claims, plaintiff has amended her complaint to add a new section entitled "Defendant's Knowledge of the Defect." SAC ¶¶ 24-41. As discussed below, the new section incorporates the customer complaints posted on Duracell's website that plaintiff had submitted with her opposition to Duracell's previous motion to dismiss. To that, she adds (1) a few additional postings she found on the internet of similar customer complaints, (2) an assertion that additional unidentified comments can be found by searching Google, YouTube and Twitter, (3) allegations on information and belief regarding allegedly undisclosed internal Duracell test results, and (4) excerpts from patent filings filed in 1997 and earlier.

The only other substantive change in the SAC is the addition of a new sentence in the breach of warranty cause of action, asserting that plaintiff's "intended purpose [in buying Duracell batteries] was the possible normal use of Defendants' AA and AAA batteries for ten years." SAC ¶ 104.

---

[2]     The Court did, however, rule that plaintiff had adequately alleged standing. *Id.* at 12-17. Because that ruling is now law of the case and applies equally to the SAC (in which plaintiff's allegations of economic injury have not changed), Duracell does not re-argue the point in this motion. However, Duracell does not agree that plaintiff has adequately alleged standing and preserves its rights on that issue.

Mot. to Dismiss Second Amended Compl.
No. 14-cv-05028-LHK

**ARGUMENT**

**I.     LEGAL STANDARD.**

To survive a motion to dismiss, a complaint must plead sufficient factual matter, if

accepted as true, to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Plaintiff must plead

"factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  While allegations of material fact are

assumed to be true and viewed in the light most favorable to the plaintiff, the Court need not

accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact,

or unreasonable inferences. *Id.* at 678-79.  Courts are "not bound to accept as true a legal

conclusion couched as a factual allegation." *Id.* at 678 (internal citation omitted).

To state a claim under the UCL, FAL, or CLRA, a plaintiff must show that "members of

the public are likely to be deceived" by the alleged misrepresentation or deception. *Sybersound*

*Records, Inc. v. UAV Corp.,* 517 F.3d 1137, 1152 (9th Cir. 2008) (citation and internal quotation

marks omitted); *Wood v. Motorola Mobility, Inc.*, No. 11-cv-04409, 2012 WL 892166, at *5-6

(N.D. Cal. Mar. 14, 2012).[3]

When alleging a claim sounding in fraud, a plaintiff must plead the fraud with

particularity.  Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103

(9th Cir. 2003).  "Averments of fraud must be accompanied by the who, what, when, where, and

how of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted).  A

"plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*

(internal quotation marks omitted).  This is true as well for claims under the UCL, FAL, or CLRA

[3]      Because UCL, FAL, and CLRA claims alleging false advertising overlap in both scope

and elements, courts often consolidate the analysis of motions to dismiss these claims. *See, e.g.*, *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162-63 (N.D. Cal. 2011) ("[C]ourts

often analyze the [UCL and CLRA] together . . . ."); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124-27 (N.D. Cal. 2010) (analyzing UCL, FAL, and CLRA claims together);

*Neu v. Terminix Int'l, Inc.*, No. 07-cv-6472, 2008 WL 2951390, at *3-4 (N.D. Cal. July 24, 2008) (same).

that are "'grounded in fraud' or . . . 'sound in fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (*quoting Vess*, 317 F.3d at 1103-04)). The heightened standard under Rule 9(b) does not apply to allegations regarding intent or knowledge. ECF No. 43, p. 18.

**II.** **PLAINTIFF DOES NOT ALLEGE A VALID FALSE ADVERTISING CLAIM UNDER THE UCL FRAUDULENT PRONG, THE FAL OR THE CLRA.**

    **A.** **The Complaint Does Not Allege A Valid Non-Disclosure Claim.**

This Court's Order recognized that plaintiff's claim that Duracell "failed to disclose that its batteries leak" requires sufficient factual allegations that (1) the batteries had a material defect, and (2) Duracell knew of that defect at the relevant time. Order, p. 17-18. Absent such facts, Duracell had no duty to make any disclosure, and "a failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *See also Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006)); *see also Collins v. eMachines, Inc.,* 202 Cal. App. 4th 249, 255-56 (2011) (setting out circumstances in which a duty to disclose exists).

The SAC fails to satisfy either requirement for finding a duty to disclose.

    **1.** **Plaintiff alleges no facts showing that Duracell batteries were defective.**

Plaintiff alleges that Duracell batteries "may leak when used or stored in the normal and expected manner." SAC ¶ 20. But she alleges no facts showing that any such leakage is the result of a defect in the product, as opposed to an inherent characteristic of all alkaline batteries. Even though she first filed this case 10 months ago and has twice amended her complaint, she still alleges nothing about the design of the product, or its manufacturing process, that she claims is defective. Nor does she allege how often the alleged leaks occur, or that Duracell batteries leak more than other brands of alkaline batteries.

Plaintiff's' failure to allege this information is inexcusable, and fatal to her claim. First, Rule 9(b) requires that she allege these facts. A nondisclosure claim, like any other fraud claim, must be pled with particularity. *Kearns,* 567 F.3d at 1127 ("Because the Supreme Court of

California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b).").  And one of the elements of a nondisclosure claim is that a material fact existed that the defendant was obligated to disclose, but did not.  "The plaintiff must set forth what is false or misleading about a statement, and why it is false.   In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994).  Here, the alleged omission was not false or misleading unless there was an actual defect to be disclosed.

Second, if the batteries really were defective, nothing prevented plaintiff from alleging facts showing as much.  She does not need any discovery from Duracell to do so.  The batteries are sold everywhere, and she and her counsel easily could have conducted whatever pre-filing investigation she needed (including obtaining an expert analysis) to verify that the batteries are in fact defective.  With expert assistance, she could have had the batteries tested, identified the rate of any failure, determined whether any failure rate was greater than that of alkaline batteries generally and analyzed the batteries to determine the cause.  She needed nothing from Duracell to do any of this.  Before filing suit, she was obligated to conduct that investigation.  The law does not—and should not—permit a plaintiff to file a lawsuit and impose on the courts and the defendant the enormous burden and expense of refuting even a meritless claim when the plaintiff has not done even the most basic spadework necessary to establish the claim.  *Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (requirements of Rule 9(b) serve "'to deter the filing of complaints as a pretext for the discovery of unknown wrongs . . . and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis'"); *Morici v. Hashfast Technologies LLC*, No. 5:14-CV-00087-EJD, 2015 WL 906005, at *3 (N.D. Cal. Feb. 27, 2015) (heightened pleading "'requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate'").

Third, such investigation was particularly important here because the mere fact that some batteries have leaked does not establish that a defect exists that must be disclosed.  Especially for

Mot. to Dismiss  Second Amended Compl.
No. 14-cv-05028-LHK

mass-produced products, such as disposable alkaline batteries (which are produced by the tens of millions), some individual units of the product may fail for any number of causes other than a product defect, including mishandling of the product during shipping, mistakes made during the manufacturing process for a particular batch of batteries, or faulty component parts provided by a third-party vendor.  Or, as is most typically the case, the product may fail because of consumer misuse.  In the case of alkaline batteries, such misuse includes exposing the batteries to extreme temperatures, dropping them or otherwise exposing them to impact, installing them improperly in devices, or leaving them in the device too long.  Food products may spoil if left unrefrigerated, tires may wear out prematurely if not properly inflated, ballpoint pens may leak if left upside down or placed in a pocket with the tip exposed, and paint may peel if not applied properly.  But such failures do not mean that any of those products is defective.

Fourth, permitting suit against the manufacturer for nondisclosure based simply on the potential for a product to fail (or evidence that some units have failed) but without proof of an actual defect would run roughshod over warranty law.  The possibility of premature failure is why product manufacturers provide warranties.  Manufacturers advertise their warranties, and consumers place value on the warranty, because they recognize that virtually no product can be assured of not failing prematurely.  If there were no possibility of failure, the warranty would be pointless.  Under plaintiff's theory, however, all warranties are pointless (or at least easily evaded) because consumers could disregard the warranty and bring a fraud suit for a refund without their product ever having failed.  All they would have to do is allege that there is a possibility of failure (and perhaps that the product purchased by other consumers failed) and be entitled to get their money back.

Reflecting that essentially all products will experience some rate of premature failure (or failure from misuse), the cases that have found a duty to disclose have involved an actual defect in the design of the product, not merely the potential inherent in any product that particular units may wear out prematurely or otherwise not function as intended.  In *Elias v. Hewlett-Packard Co.*, No. 12-CV-00421-LHK, 2014 WL 493034, at *1 (N.D. Cal. Feb. 5, 2014), for example, the plaintiff alleged that Hewlett-Packard had installed a 220-watt power supply unit in one of its

computer models, when the component parts in that model needed at least 300 watts to operate properly.  According to the plaintiff, because of this identified design defect, the power supply unit was "incapable of providing adequate power."  *Id.* at *4.  In *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *1 (C.D. Cal. Oct. 3, 2014), the plaintiff likewise alleged the existence of an actual, identified design defect—*i.e.*, the sealed ball bearing system in the automobile's water pump was defective because the stress placed on it exceeded engineering limitations.  *See also Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1143 (9th Cir. 2012) (noting that the "complaint describes the design defect in some detail," including "that the component that connects the power jack to the motherboard 'was designed in a manner that is exceedingly fragile,' as the connection is supported only by a few pins affixed with solder"); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 917 (N.D. Cal. 2012) (defendant admitted that the formula it used to calculate and display signal strength on cell phones was "totally wrong"); *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011) (alleged defect in printer feed "was present 'out of the box' in every 8500 Printer 'and manifested on a regular basis when using the ADF regardless of conditions'").

Here, unlike these cases, plaintiff has not identified any defect, but only that some unidentified fraction of the millions of batteries sold each year allegedly leaked under completely unknown circumstances.  For all the complaint reveals, the alleged instances of leakage could have been due entirely to consumer misuse, to mishandling during shipping, to possibly counterfeit batteries, or any of numerous other causes.  None of that could possibly give rise to any duty to disclose.  Without an actual, identified defect in the battery, plaintiff has no basis for any claim.  Duracell is not aware of any case—and plaintiff has cited none—in which a court has ruled that alleging only a potential to fail, or some instances of failure, is enough to state a valid claim.  Because that is all plaintiff has done here (even after twice amending her complaint), her complaint should be dismissed with prejudice.

**2.     Plaintiff has not cured her failure to allege that Duracell was aware of any defect.**

Even if plaintiff had adequately alleged the existence of a defect, she still has not adequately alleged that Duracell was aware of any such defect.

She primarily relies on comments unknown people posted on Duracell's website or elsewhere on the internet.  Anonymous postings on the internet are hardly a reliable source of information, and plaintiff alleges no facts indicating that she has any basis for concluding that the postings are legitimate or accurate.  But even accepting the truthfulness of the unsubstantiated postings, they establish neither the existence of a defect nor Duracell's knowledge of any defect.  Once the duplicates are eliminated, she points to 35 postings on Duracell's website.  SAC ¶¶ 25-26 & Exh. 1.  Twelve of those do not say anything about leakage, and another nine are either dated before the launch of Duralock in June 2012 or pertain on their face to batteries purchased before Duralock was launched (judging by the stated expiration date of the batteries).  At best, therefore, she has identified only 14 comments on Duracell's website about leakage in batteries after the launch of Duralock—and none of those comments shed any light on the reasons why the batteries at issue leaked.  Indeed, most of the 14 comments refer to leakage occurring while the battery was in a device.  Especially in that circumstance, there are myriad reasons aside from any problem with the battery why the leakage could have occurred, including that the batteries were improperly inserted in the device or left in the device after discharge.  Moreover, Duracell's Duralock power preserve warranty only covers the batteries while they are in storage, not once they have been put in a device.  In the context of the hundreds of millions of Duracell batteries sold during the relevant period, this small number of unverified instances of leakage from unknown causes does not come close to showing either a defect or Duracell's knowledge.  To the contrary, it only confirms the absence of any systematic defect.  And that is true even if the three other complaints specifically identified in the complaint are considered.  See SAC ¶¶ 28, 36, 38.[4]

---

[4]     Plaintiff's allegation on "information and belief" that an entity called the TFPS Group complained about a large number of batteries leaking is particularly unfounded.  SAC ¶ 28.  The allegation is presumably lifted from https://www.reddit.com/r/self/comments/35dh8f/duracell_

(continued)

Plaintiff's reference to other, unidentified internet postings fares no better. She asserts that searching on Google, YouTube or Twitter will turn up "videos and complaints about" leakage. SAC ¶¶ 33-35. But she does not identify the content of any of those postings. There is no basis for concluding that any of them show the existence of a defect in genuine Duracell batteries or Duracell's knowledge of it. Like the postings on Duracell's website, to the extent any of them claim that their Duracell batteries leaked, that sheds no light on the existence of a defect, let alone that Duracell knew of any such defect, given that numerous reasons why batteries can leak. Telling the defendant and the Court to "google it" to find the facts on which a claim is based is not a valid method of pleading.

In *Berenblat v. Apple, Inc.*, No. 08-4969 JF (PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010), the plaintiffs relied on customer complaints as evidence that Apple knew of a defect. The plaintiff alleged that there were over 350 complaints to Apple by the time plaintiff acquired his computer, far more than the number of complaints plaintiffs have identified here. *Id.* at *8. But the court nonetheless dismissed the case on the ground that a customer complaint and knowledge of a defect were not the same: "[T]he complaints posted on Apple's consumer website [only] *establish the fact that some consumers were complaining*. By themselves they are insufficient to show that Apple had knowledge that the memory slot *in fact was defective* and sought to conceal that knowledge from consumers." *Id.* at *9 (emphasis added). The same is true here. Plaintiff's allegation that there is some unknown number of complaints does not show Duracell knew of a defect.[5]

---

batteriespg_products_are_not_as/, which plaintiff's counsel no doubt found as they were trolling the internet for some way to bolster their claim. But plaintiff offers no basis for believing the assertions in this posting are true or that the batteries involved were the same batteries sold by Duracell in North America (according to the posting, the batteries were purchased by a company in Dubai), let alone that Duracell concluded (or should have concluded) from any such assertions that its batteries are defective.

[5] *See also Herremans*, 2014 WL 5017843, at *10 (finding insufficient to establish knowledge an allegation that defendant received "numerous . . . complaints" from consumers about the alleged defect); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 n.9 (N.D. Cal. 2008) ("Random anecdotal examples of disgruntled customers posting their view on websites at an unknown time is not enough to impute knowledge on defendants."); *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19,

(continued)

The other two categories of allegations plaintiff has added to her complaint also do not fill the gap. She first alleges on "information and belief" that Duracell conducted "internal testing" and supposedly learned that Duracell batteries "were defective and could, and did, leak." SAC ¶¶ 29-32. But she alleges no facts regarding when the alleged testing occurred or whether it involved batteries covered by the Duralock warranty. Nor does she allege any facts about what the test results actually were or what they revealed regarding any design or manufacturing defect that could systematically affect all Duracell batteries in the marketplace. She tries to dress up her allegation by referring to some industry standard tests, and she notes that Duracell employees were involved in creating those standards. But none of this bears on what tests were actually performed and what the results were. All she offers on that critical issue is the conclusory assertion that Duracell knew the batteries were defective. That is insufficient. *See Herremans,* 2014 WL 5017843, at *17 (dismissing complaint where plaintiff alleged that testing had been done but "allege[d] no facts as to when the pre-release testing she references took place" and did not "describe the internal testing or what it shows").[6]

Plaintiff cannot salvage these allegations by asserting that any internal test results are not public knowledge. As this Court recognized, even when some information is not publicly

2013) (rejecting "knowledge" and "duty to disclose" allegations premised on claim that Honda knew of a defect based on "pre-release testing data, early consumer complaints to Honda and dealers, testing done in response to complaints, replacement part sales data, aggregate data from Honda dealers, and other internal sources."); *Rice v. Sunbeam*, No. CV 12-7923-CAS-(AJWx), 2013 WL 146270, at *7-8 (C.D. Cal. Jan. 7, 2013) (finding allegations that defendant had previously demanded consumers return their defective products, had received unspecified customer service/warranty service call center records for returns and/or complaints, and "numerous individual letters and communications sent by members of the Class" insufficient to allege knowledge under the CLRA).

[6] In *Kowalsky*, 2011 WL 3501715, this Court ruled that it was unnecessary to plead facts regarding when the internal testing occurred or what it revealed. In that case, however, the defendant was alleged to have affirmatively represented that the document feeder on a printer would meet a specific performance standard, a representation that it could not make without having first performed the internal testing. Moreover, the complaint alleged that the defect affected "every printer" and "manifested on a regular basis." *Id*. at *4. It was thus a plausible inference that the defendant had indeed conducted the tests and that they revealed a systematic defect, rather than temporary or isolated problem that did not suggest any such defect. No such inference is possible here, where there are no facts alleged showing a systematic defect.

Mot. to Dismiss Second Amended Compl.
No. 14-cv-05028-LHK

1  available, a plaintiff cannot file a lawsuit simply on the basis of conclusory allegations that are

2  not factually supported.  Dkt. 43, p. 21.  Nor can plaintiff hide behind her "information and

3  belief" allegation.  Even when pleading on information and belief, the plaintiff must allege more

4  than bare conclusions.  *See Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health*

5  *Care Servs.,* 727 F.3d 917, 927 (9th Cir. 2013).  Moreover, "information and belief " allegations

6  are sufficient only when they are supported with "a statement of the facts upon which the belief is

7  based." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1095 (N.D. Cal. 2014); *Bryant v.*

8  *Mattel, Inc.*, No. CV 04-9049 DOC RNBX, 2010 WL 3705668, at *8 (C.D. Cal. Aug. 2, 2010)

9  (same).  Plaintiff offers no facts here showing the basis for her belief regarding Duracell's testing

10  or how that testing or test results are relevant support for her claims.

11       Finally, plaintiff's resort (SAC ¶ 39) to quoting language from various patent filings

12  establishes nothing.  The most recent filing she cites pre-dates the 2012 launch of Duralock by

13  15 years.  The earliest filing she cites was 23 years before the launch.  Plaintiff offers no facts

14  showing that any of these dated references is related in any way to the batteries Duracell was

15  selling in 2012 and later.  Moreover, even if the filings were referring to current battery designs

16  and technologies, a description in a patent filing that batteries are designed with vent mechanisms

17  to allow gas to escape if internal pressure reaches dangerously high levels does not establish that

18  those batteries are defective.  At most, it shows why consumers are warned to use care in

19  handling their batteries, including not inserting them improperly into a device, leaving them in a

20  device after they are discharged or taking other actions that can lead to venting and leakage.

21       The Court in *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV*

22  *Television Litig.*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010), rejected an attempt to prove knowledge

23  of a defect from patent filings in almost the identical circumstance as here:

24       Plaintiffs do not link any of the patent filings to the 2005 Models; nor do the
         patent filings themselves evince any knowledge of the defect on Sony's part.

25       Plaintiffs quote language from the patent applications that discusses certain
         "disadvantages" of LCD technology, but that language describes the then-current

26       state of LCD technology, generally; it does not show that Sony was aware of any
         defects specific to any of its televisions, let alone to the 2005 Models.

27

28

*Id.* at 1090.  The same is true here.[7]

In sum, plaintiff has not satisfied either of the requirements of a valid nondisclosure claim. She has not alleged facts showing the existence of any defect.  Nor has she shown that Duracell knew of any defect.  At best, she has alleged only that some individual Duracell batteries failed prematurely for reasons she has failed to identify but which could be any number of things entirely unrelated to any defect.  That is not enough to state a valid claim.

## B.    The Complaint Does Not Allege Any Actionable Affirmative Misrepresentations.

In opposing Duracell's previous motion to dismiss, plaintiff argued that she had stated a claim for affirmative misrepresentation.  This Court did not explicitly address that contention in its Order.  However, the Court appears to have implicitly rejected the claim by dismissing the entire complaint after concluding no valid nondisclosure claim had been stated.  But, even if the Court did not intend to rule on that issue in its Order, it should rule now that plaintiff has not alleged valid affirmative misrepresentation claim.

Plaintiff asserts that her claims are "based upon Defendants' representations that these batteries were warranted for ten years" and that Duracell "affirmatively represent[ed]" that its batteries are "guaranteed not to fail" within that period.  SAC ¶¶ 1, 19.  To the extent these allegations are intended to state a claim for an affirmative misrepresentation, that claim must be dismissed because plaintiff does not allege any facts showing that the representation was false— *i.e.*, that Duracell did not warrant the batteries for 10 years.

Merely alleging that a product has the potential to fail or has failed does not turn a warranty of the sort alleged here into a tortious representation.  A warranty is not a promise that the product will not fail during the warranty period.  It is instead a contractual undertaking that, should the product fail in a manner that is covered by the warranty, the manufacturer will repair

---

[7]    Likewise unfounded is plaintiff's reliance (SAC ¶ 27) on Duracell's counsel's argument in a related action in Massachusetts (which plaintiff incorrectly identifies as having been in 2005, rather than 2015).  Saying that alkaline batteries have the potential to leak is not saying that Duracell batteries were defective, any more than saying that meat has the potential to spoil or to be mishandled means the meat is defective.

or replace it in accordance with the warranty terms. That is what Duracell undertook when it stated on its packaging that the batteries are "Guaranteed for 10 Years in Storage." Plaintiff does not allege that Duracell does not in fact extend a 10-year power preserve warranty on the batteries. Nor does she allege that Duracell has failed to honor its power preserve warranty—*i.e.*, that she or others have made a warranty claim that has been improperly denied. And even if she had so alleged, that would at best allege a claim for breach of warranty, not a fraud claim for misrepresentation. Plaintiff is improperly trying use false advertising law to circumvent the law of warranty, including the restrictions that warranty law places on recovery (including that the product have actually failed and that manufacturer have refused to honor the warranty).

Plaintiff's reliance on the warranty also fails because the Duralock warranty on which she relies covers preservation of power in storage, whereas she claims that the batteries leak when being used. *E.g.*, SAC ¶ 43. Perhaps recognizing this limitation, plaintiff also asserts that the batteries can leak when "stored in devices not in service or use." *Id*. ¶ 22. But the warranty refers only to "storage," not to the period after the battery has already been put into a device for use but is not actively being used. And the battery package instructs consumers to "Keep in original package until ready to use." *See* Declaration of Scott Stewart.[8]

Plaintiff also alleges that Duracell stated in a press release that Duracell batteries provide "Trusted Power" and "power when you need it," and that Duracell ran television and radio commercials that stated, "It just has to work. Duracell. Trusted Everywhere." SAC ¶¶ 15, 18. None of this alleges a valid misrepresentation claim.

First, plaintiff does not allege that she read and relied on the press release or any other materials containing these statements. She asserts only that she read the package label and heard

---

[8]  Duracell requests that the Court take judicial notice of the label. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (court may take judicial notice of materials alleged in complaint). In accord with the Court's Order, the Stewart Declaration establishes that the labels attached to his declaration reflect the relevant language that appeared on all relevant packages throughout the relevant period. Moreover, taking judicial notice of the entire label, including the back of the package, is appropriate because plaintiff quotes a portion of the language on the back of the package. SAC ¶ 17. Judicial notice is appropriate to prevent this selective quotation that omits the portions of the label that defeat her claim.

or saw advertising about the "Duralock guarantee." SAC ¶ 43. Having failed to plead reliance on the alleged misrepresentations, she has not stated a valid claim. *See Krouch v. Wal-Mart Stores, Inc.*, No. 12-CV-02217-YGR, 2014 WL 5463333, at *8 (N.D. Cal. Oct. 28, 2014) (reliance is a required element under the UCL, CLRA and FAL); *In re iPhone Application Litig.*, 6 F. Supp. 2d 1004, 1020-21 (N.D. Cal. 2013) (refusing to find that plaintiffs relied on a statement they did not see, read, or hear). Moreover, any claim based on the unidentified "TV advertising" and "radio advertising" fails because plaintiff has not alleged the content of that advertising, when or where she supposedly saw or heard it, or what portions of the advertising she relied upon as material. *Kearns*, 567 F.3d at 1126 (finding complaint insufficient the plaintiff failed to allege "circumstances surrounding such representations," including "what the television advertisements or other sales material specifically stated . . . , when he was exposed to them or which ones he found material . . . , [or] which sales material he relied upon in making his decision").

Second, to be actionable, a statement must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). Advertisements that consist of "product superiority claims that are vague or highly subjective" (*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)), are non-actionable puffery.

The statements on which plaintiff relies are puffery. A claim that a product is "trusted everywhere" and provides "power when you need it" is not "specific and measurable." Rather, it is a vague and subjective assertion that is nothing "more weighty than an advertising slogan." *Consumer Advocates v. Echostar Satellite Corp*, 113 Cal. App. 4th 1351, 1361 (2003). This Court and numerous others have rejected fraud claims premised on such puffing. *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123 (N.D. Cal. 2013) (granting motion to dismiss claim against advertising that stated the product "delivers the power you need" and that promised "ultra-reliable performance," "full power and performance," and a "versatile, reliable system"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (finding statements that product offered "superb, uncompromising quality" and that it was "faster, more powerful, and more innovative than competing machines" to be puffery); *see also Anunziato v. eMachines,*

*Inc.*, 402 F. Supp. 2d 1133, 1139-40 (C.D. Cal. 2005) (finding statements that an allegedly defective notebook computer provided "outstanding quality, reliability, and performance" and used "high quality components" were puffery); *Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2006 WL 3093685, at *1, *5 (N.D. Cal. Oct. 31, 2006) (finding statements that an allegedly defective computer provided "high performance" and was "top of the line" were puffery); *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *7 (N.D. Cal. July 27, 2007) (advertising that HP Pavilion laptops were a "reliable mobile computing solution" that could "do more on the move" was puffery); *In re Sony*, 758 F. Supp. 2d at 1089 (same for statements that allegedly defective televisions were of "high quality" and "superior quality"); *see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can think of no sound reason why they should not do so.").

## III.    PLAINTIFF'S UCL CLAIMS FOR UNLAWFUL AND UNFAIR CONDUCT ALSO FAIL.

Plaintiff's claim under the "unlawful" prong of the UCL alleges that Duracell violated the FAL and CLRA through its alleged false advertising.  SAC ¶ 57.  Because Plaintiff has not stated a valid claim under those statutes, her derivative claim under the UCL fails as well.  See Order, p. 21 (dismissing UCL "unlawful" claim along with CLRA and FAL claim); *Aleksick v. 7–Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails.").

Similarly, as this Court recognized (Order, p. 22-23), plaintiff's claim under the UCL "unfair" prong simply repeats plaintiff's false advertising claim.  Just as in plaintiff's previous complaint, the only alleged unfair conduct in the SAC is that Duracell "concealed" that Duracell

batteries have a propensity for premature leakage.  SAC ¶ 63.  This claim fails for the same reasons discussed above.[9]

## IV.    PLAINTIFF HAS NOT ALLEGED A VALID CLAIM FOR "UNJUST ENRICHMENT."

Plaintiff's sixth cause of action for "Unjust Enrichment" also must be dismissed for the same reasons discussed above.  Plaintiff asserts that Duracell was unjustly enriched because Duracell batteries were "not what Defendant purported them to be."  AC ¶ 100.  As discussed above, these allegations fail to state an actionable wrong or any injury to plaintiff, and thus fail to state a claim for relief under any theory.  *Hill v. Roll Int'l Corp.,* 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim.  There being no actionable wrong, there is no basis for relief.") (citations omitted); see Order, pp. 24-25 (dismissing unjust enrichment claim in plaintiff's previous complaint on this same basis).

## V.    PLAINTIFF'S WARRANTY CLAIM IS MERITLESS.

Plaintiff's final cause of action is for breach of implied warranty of fitness for a particular purpose.  This Court dismissed this claim on the ground that plaintiff had not alleged that she had any particular purpose different from the ordinary purpose for using Duracell batteries or that Duracell knew of any such purpose.  Order, pp. 25-27.  Plaintiff has not cured this defect.  The claim should accordingly be dismissed, this time with prejudice.

As this Court ruled, "[a]n implied warranty of fitness for a particular purpose arises only where (1) the purchaser at the time of contracting intends to use the goods for a particular purpose, (2) the seller at the time of contracting has reason to know of this particular purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose, and (4) the seller at the time of contracting has reason to know that the buyer is relying on such skill and judgment."  *Keith v. Buchanan,* 173 Cal. App. 3d 13, 25 (1985).  "A particular purpose differs from the ordinary purpose for which the goods are used in that it

---

[9]    Plaintiff's claim under the UCL "fraudulent" prong is addressed, along with her FAL and CLRA claims, in section II above (*supra*, pp. 7-18).  All of these claims should be dismissed.

Mot. to Dismiss  Second Amended Compl.
No. 14-cv-05028-LHK

envisages *a specific use by the buyer* which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Am. Suzuki Motor Corp. v. Superior Court,* 37 Cal. App. 4th 1291, 1295 n. 2 (1995) (emphasis added) (internal quotation marks omitted).

Plaintiff still alleges none of this. The only change she made to this portion of her complaint was to add a single sentence asserting that her "intended purpose was the possible normal use of Defendants' AA and AAA batteries for ten years." SAC ¶ 104. As in her previous complaint, she is still left with the fact that she does not allege that this "intended" use was any different from the ordinary purposes for which consumer alkaline batteries are used. She also still does not allege that Duracell had any reason to know of any particular purpose she had for her batteries. Nor does she allege that she relied on Duracell to select batteries suitable for her particular purpose or that Duracell had reason to know of any such reliance. Her warranty claim accordingly fails.

### CONCLUSION

For the foregoing reasons, plaintiff's Second Amended Complaint should be dismissed with prejudice.

Dated: September 28, 2015.                    JONES DAY


                                              By:  /s/ Craig E. Stewart
                                                   Craig E. Stewart

                                              Counsel for Defendants THE GILLETTE
                                              COMPANY and THE PROCTER & GAMBLE
                                              CO.

NAI-1500558324v1