Craig E. Stewart (State Bar No.129530)
cestewart@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:    415-626-3939
Facsimile:    415-875-5700

Darren K. Cottriel (State Bar No. 184731)
dcottriel@jonesday.com
Ann T. Rossum (State Bar No. 281236)
atrossum@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone:    949.553.7548
Facsimile:    949.553.7539

Attorneys for Defendants
THE GILLETTE COMPANY and
THE PROCTER & GAMBLE CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| RENEE PUNIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY and THE PROCTER & GAMBLE COMPANY,<br><br>Defendant. | **Case No. 5:14-cv-05028-LHK**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:      January 28, 2016<br>Time:     1:30 p.m.<br>Place:     Courtroom 8 – 4th Floor |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

I. PLAINTIFF DOES NOT ALLEGE A VALID FALSE ADVERTISING CLAIM UNDER THE UCL FRAUDULENT PRONG, THE FAL OR THE CLRA. ......................... 2

    A. Plaintiff alleges no facts showing that Duracell batteries were defective. .................... 2

    B. Plaintiff has not cured her failure to allege that Duracell was aware of any defect. ........................................................................................................................ 6

    C. The complaint does not allege any actionable affirmative misrepresentations ............. 7

II. PLAINTIFF'S UCL CLAIMS FOR UNLAWFUL AND UNFAIR CONDUCT ALSO FAIL. ................................................................................................................... 10

III. PLAINTIFF HAS NOT ALLEGED A VALID CLAIM FOR "UNJUST ENRICHMENT." ............................................................................................................ 10

IV. PLAINTIFF'S WARRANTY CLAIM IS MERITLESS. ..................................................... 10

V. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE. .............................. 11

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

Cases

*Berenblat v. Apple, Inc.*,
  No. 08-4969 JF (PVT), 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ......................................... 6

*Bryant v. Mattel, Inc.*,
  No. CV 04-9049 DOC RNBX, 2010 WL 3705668 (C.D. Cal. Aug. 2, 2010) ............................ 7

*Doe v. Successfulmatch.com*,
  No. 13-03376-LHK, 2014 WL 1494347 (N.D. Cal. Apr. 16, 2014) ............................................ 8

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ...................................................................................................... 2

*Elias v. Hewlett-Packard Co.*,
  950 F. Supp. 2d 1123 (N.D. Cal. 2013) ...................................................................................... 9

*Hairston v. S. Beach Beverage Co.*,
  No. 12-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ............................................. 9

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) ...................................................................................................... 2

*Jou v. Kimberly-Clark Corp.*,
  No. 13-03075-JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ............................................ 9

*MacDonald v. Ford Motor Co.*,
  37 F. Supp. 3d 1087 (N.D. Cal. 2014) ....................................................................................... 7

*Morici v. Hashfast Technologies LLC*,
  No. 5:14-CV-00087-EJD, 2015 WL 906005 (N.D. Cal. Feb. 27, 2015) .................................... 3

*Red v. Kraft Foods, Inc.*,
  No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ....................................................... 9

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) .................................................................................................. 11

*Viggiano v. Hansen Natural Corp.*,
  No. 12-10747-MMM, 2013 WL 2005430 (C.D. Cal. May 13, 2013) ........................................ 9

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) .................................................................................................... 2

Rules

Fed. R. Civ. P. 9(b) .................................................................................................................... 2, 3

- iii -

Reply ISO Mot. to Dismiss Sec. Am. Compl.
No. 14-cv-05028-LHK

**INTRODUCTION**

Plaintiff has no valid answer to the points that require dismissal of her complaint. Most importantly, she ignores the first step of her claim and the principal basis upon which defendants moved for dismissal. Before a manufacturer can have a duty to disclose a product defect, there must be a defect to disclose. Plaintiff skips over this step. Nowhere in her SAC, or in her opposition, does plaintiff offer any facts showing that Duracell batteries have a defect. She asserts only that some batteries have leaked or might leak. No case, however, has held that the mere potential for some individual units of a mass-produced product to fail prematurely (or the actual failure of some units) is enough to state a claim for nondisclosure. For this reason alone, plaintiff's claim must be rejected.

Nor has plaintiff cured her failure to allege facts showing that Duracell knew of any defect. Her opposition on this point simply refers to the allegations of her complaint, without addressing Duracell's showing that these allegations fail at every turn. The handful of customer complaints to which she points are unsubstantiated, do not reveal the cause(s) of the leakage, and are so small in number (in the context of hundreds of millions of batteries manufactured and sold every year) to be past the vanishing point. Almost all of the complaints (nearly all of which are anonymous and could have been posted by anyone, including competitors or people who never purchased the batteries and are fabricating stories) on their face involve batteries that pre-date the launch of the DuraLock guarantee. She likewise alleges no facts regarding any internal testing that show that the testing revealed any defect, let alone one systematically affecting all Duracell batteries. And the patent filings to which she points are so outdated as to be meaningless. Plaintiff responds to none of this.

Perhaps most importantly, plaintiff offers no rebuttal to the point that accepting her claim would expose virtually every manufacturer of consumer products in the country to a suit like this. If all that is necessary to state a claim is to allege the mere potential that the product may fail, go find a few customer complaints on the internet, make some conclusory allegations about testing results, and point to decades-old patent filings—all without identifying anything in the product itself that is actually defective—no consumer product manufacturer is safe from suit.

If plaintiff's batteries had actually failed (and if Duracell had failed to honor its guarantee), plaintiff would have a warranty claim.  If there were an actual defect in the batteries plaintiff purchased that Duracell knew about but concealed, she might have a nondisclosure claim.  But she has not alleged facts showing any of this.  Her failure to make these fundamental allegations demonstrates that this litigation is attorney-manufactured and an abuse of the class-action mechanism.  Her complaint should be dismissed, this time with prejudice.

## ARGUMENT

### I. PLAINTIFF DOES NOT ALLEGE A VALID FALSE ADVERTISING CLAIM UNDER THE UCL FRAUDULENT PRONG, THE FAL OR THE CLRA.

#### A. Plaintiff alleges no facts showing that Duracell batteries were defective.

As shown in Duracell's motion, the cases that have required disclosure of a product defect involved an actual product defect—*e.g.*, a computer made with a power supply unit that did not meet the component manufacturer's requirements, a water pump part that did not meet required engineering standards, or a signal strength meter that the defendant admitted was "totally wrong."  *See* Mot. at 9-10 (citing cases).  In the leading case in this area from the Ninth Circuit, the "complaint describe[d] the design defect in some detail."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th Cir. 2012).  Plaintiff does not address any of these cases, let alone offer any contrary authority that permits a nondisclosure-of-defect case without a defect.  She has thus conceded that she must plead a defect.

She also does not dispute that her product defect allegations must meet the heightened pleading standard of Rule 9(b).  That rule applies because the existence of a defect is necessary to explain "why the statement or omission complained of was false or misleading."  *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994).  Plaintiff therefore must "plead with particularity allegations that provide a reasonable basis to infer" that Duracell batteries are in fact defective.  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

She has not done so.  She points to no facts (in her complaint or anywhere else) showing a defect.  She does identify any manner in which Duracell batteries were improperly designed in any engineering or technical respect.  Nor does she identify any flaw in the process by which the

- 2 -    Reply ISO Mot. to Dismiss Sec. Am. Compl.
No. 14-cv-05028-LHK

batteries are manufactured.  She thus offers no factual basis for concluding that Duracell batteries contained any defect at all, let alone a systematic defect that affected the batteries generally and that could possibly give rise to a duty to disclose.

Plaintiff offers no justification for her failure to allege this fundamental prerequisite to her claim.  She does not dispute that she easily could have purchased as many batteries as she wished and had them analyzed by an expert to determine whether they contain any defect.  Nor does she dispute that she was obligated to conduct such a pre-suit investigation to ensure that her "charge of fraud is responsible and supported, rather than defamatory and extortionate."  *Morici v. Hashfast Technologies LLC*, No. 5:14-CV-00087-EJD, 2015 WL 906005, at *3 (N.D. Cal. Feb. 27, 2015).  Her failure to conduct even this most basic investigation necessary to sustain her claim requires that her complaint be dismissed.

Plaintiff's apparent theory is that leakage in some batteries (or the possibility of such leakage) means that all of the batteries had a defect that Duracell was required to disclose.  This assertion fails for at least three reasons.  First, plaintiff does not contest that individual batteries can leak for any number of reasons, including isolated problems in the manufacturing and shipping process or, most commonly, mishandling by consumers.  The mere fact that some batteries leak therefore says nothing about the existence of any systematic defect—any more than the fact that some automobile batteries or tires do not last for the entire period of their warranty period means that the entire product line is defective, or that some light bulbs burn out early means all the bulbs are defective.

Second, plaintiff does not allege any facts showing what percentage of Duracell batteries have leaked, or that Duracell batteries leak any more than other consumer alkaline batteries.  She sprinkles her opposition with assertions that Duracell batteries "often" leak (Opp. at 10), have a "substantial probability" of leaking (*id*. at 1), "regularly" leak (*id.* at 5), or are "excessively susceptible to leakage."  *Id.* at 6.  None of this, however, is in her complaint.  And, whether in her complaint or not, such vague and conclusory assertions do not satisfy Rule 9(b).  They offer no factual basis for concluding that the rate of leakage is sufficiently high that it would be reasonable

to infer it is the result of a defect rather than any of the other innumerable causes of battery leakage.

If anything, plaintiff's allegations prove the absence of systematic defect. She alleges that Duracell batteries comprise 25% (or $2.75 billion) of an annual $11 billion battery market. SAC ¶ 12. Accepting that as true, that equates to hundreds of millions of Duracell batteries in the marketplace. Yet, out of that entire universe, all plaintiff can point to (after twice amending her complaint) is a small handful of unverified and mostly anonymous complaints she or her attorneys found on the internet of customers whose batteries leaked from unknown causes. Even assuming that the actual rate of leakage is greater (even much greater) than the number of internet complaints referenced in her complaint, plaintiff still has not come close to showing anything even remotely approaching a large enough number to show a systematic defect. Even if plaintiff had alleged facts showing that millions of batteries leaked (and she has ***not*** alleged any such facts), that would still amount to only a fraction of 1% of all Duracell batteries, based on plaintiff's own allegations. Particularly given the number of non-defect-related reasons a battery can leak, a leakage rate that low does not establish a systematic battery defect. It shows the opposite.[1]

Third, plaintiff makes clear throughout her opposition that the leakage to which she is referring is largely leakage occurring after the batteries are put into use. She repeatedly asserts (without supporting facts) that the batteries "leak even when ***used*** in a normal and expected manner." Opp. at 3 (emphasis added). And she complains that the batteries can leak "while sitting in appliances" (*id*. at 10), or when being "stored in devices not in service." *Id*. at 3. The DuraLock power preserve guarantee on which she predicates her claim, however, is explicitly limited to batteries in "storage." SAC ¶ 16. This limitation reflects that the risk of mishandling and damage to the batteries is greatly multiplied once the consumer removes the batteries from

---

[1]   Plaintiff points to a consumer who claimed that Duracell batteries have a 100% failure rate. Opp. at 9. But plaintiff does not—cannot—vouch for the accuracy of this obviously groundless assertion. If hundreds of millions of Duracell batteries leaked every year, plaintiff would certainly have evidence of it.

the packaging and places them in a device. Despite this limitation, the bulk of even the limited number of consumer complaints on which plaintiff relies refer to leakage in a device rather than while in storage. SAC Ex. 1. This is yet more reason why plaintiff has failed to offer any facts sufficient to show any defect.

Plaintiff argues "storage" can reasonably be interpreted to include being "'stored' in a household device." Opp. at 13. Under plaintiff's view, even once a battery is put in a device, it is still in "storage" during any period in which it is not actually "in service or use" (*i.e.*, actually powering a device). Under that theory, every household appliance would be continually in "storage" except when it is actually being used. Or an automobile battery would be continually in "storage" even after being installed in a vehicle, except for the few seconds when it is used to start the car. No reasonable consumer could ascribe that meaning to Duracell's guarantee. And that is particularly true given that the battery package itself instructs consumers to "Keep in original package until ready to use" and warns them not to "carry batteries loose in your pocket or purse." ECF No. 49-1.

Plaintiff complains that this instruction is on the back of the package and claims that she never saw it. Opp. at 13-14. But her complaint quotes language from the back of the package that immediately precedes this instruction. Indeed, the language is in the same paragraph plaintiff quotes in her complaint. SAC ¶ 17. She cannot have it both ways, relying only on some parts of the label while disavowing the immediately following language that defeats her claim. Moreover, she is incorrect in asserting that the language on the back of the label contradicts the front of the label. The front of the label itself explicitly limits the guarantee to batteries in storage. The back of label directing consumers to keep the batteries in the original packaging is entirely consistent with that limit and sheds light on its meaning.

In sum, plaintiff's opposition removes any doubt that she has not—and cannot—state a valid claim of nondisclosure. She knows neither the number of batteries that have supposedly leaked nor the cause of any leakage. She has not done even the most minimal investigation to determine whether any actual defect exists. She is suing simply on the basis of a small handful of unverified complaints from the internet about which she knows nothing and that, if anything,

contradict her claim of a systematic defect. Her theory is that a purported "potential" of premature failure (SAC ¶¶ 2, 23, 43, 49(b)) is enough to sue for nondisclosure and get a refund. No authority supports that result. It would mean virtually every manufacturer of a mass-produced product could be sued. This Court should reject her unfounded claim.

### B. Plaintiff has not cured her failure to allege that Duracell was aware of any defect.

Plaintiff's effort to show that she has adequately alleged Duracell's knowledge of the purported defect also fails.

She argues that she has shown "with precision" how consumers complained. Opp. at 9. But, as Duracell's motion demonstrated, this supposedly precise showing consists simply of copying a few dozen customer complaints from the internet, all of which are unverified, most of which have nothing to do with leakage in DuraLock power preserve batteries, and none of which establish the cause of any leakage. See Mot. at 11. As discussed above, in the context of a product sold in the hundreds of millions every year and that can be damaged and leak for reasons entirely apart from any defect, the purported existence of even "scores" (Opp. at 9) of complaints does not show that Duracell knew of any defect. If anything, it shows the opposite. *Compare Berenblat v. Apple, Inc.*, No. 08-4969 JF (PVT), 2010 WL 1460297, at *8 (N.D. Cal. Apr. 9, 2010) (dismissing complaint even though the plaintiff alleged that there were over 350 complaints to Apple by the time plaintiff acquired his computer).

Likewise groundless is plaintiff's attempt to defend her "internal testing" allegations. She argues that the supposed test results make it "abundantly clear" that Duracell knew the batteries were defective. Opp. at 8. In fact, no such conclusion is possible because plaintiff's allegations do not identify when the alleged testing occurred or whether it even involved batteries covered by the DuraLock warranty. Nor does plaintiff offer any facts about what may have caused the purported negative result, whether the result persisted or was addressed, or whether it was

1  something that affected all Duracell batteries.  In the absence of such facts, plaintiff's allegation is
2  meaningless.[2]

3        Finally, plaintiff asserts that the patent filings recited in her complaint "additionally" show
4  that Duracell had knowledge of a leakage defect.  Opp. at 10.  But she offers no explanation as to
5  how filings from 15 years or more ago show anything at all about Duracell's current batteries,
6  much less that the current batteries are defective.  Indeed, the patent filings do not show that *any*
7  battery is defective.  If anything, they show only that leakage can occur when an alkaline
8  battery's internal pressure becomes dangerously high.  This is akin to saying that a light bulb is
9  defective because it can break if dropped, or saying that the filing of a patent that seeks to make
10  the bulb less susceptible to such breakage means the bulb was defective.

11        A manufacturer cannot be held liable for failing to disclose a purported defect of which it
12  had no knowledge.  Plaintiff has failed to allege facts showing any such knowledge—which is
13  hardly surprising given that she has not shown the existence of any defect in the first place.  It is
14  hard to know of something that does not exist.

15        **C.**    **The complaint does not allege any actionable affirmative misrepresentations.**

16        Plaintiff fares no better in her attempt show that she has alleged a valid affirmative
17  misrepresentation claim.

18        Plaintiff argues that, because Duracell's guarantee does not include the words "or your
19  money back," Duracell was not simply providing a warranty but was falsely representing that no
20  Duracell battery with the DuraLock power preserve will ever leak.  This argument seriously
21  misconstrues what a guarantee is; it is no more than a promise to repair, replace, or refund to the
22  consumer the amount paid for a product.  Even the online dictionary to which plaintiff cites
23  defines guarantee, as its first definition, as "a promise that something will be done or will happen,
24  esp. *a written promise by a company to repair or change a product that develops a fault* within a

---

[2]  Moreover, plaintiff does not contest that, to validly plead matters on "information and belief," she must provide "a statement of the facts upon which the belief is based." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1095 (N.D. Cal. 2014); *Bryant v. Mattel, Inc.*, No. CV 04-9049 DOC RNBX, 2010 WL 3705668, at *8 (C.D. Cal. Aug. 2, 2010) (same).  She has not done so.

particular period of time." Cambridge Dictionaries Online (May 14, 2015), http://dictionary.cambridge.org/us/dictionary/american-english/guarantee (emphasis added).

Consumer products, particularly those manufactured on a mass scale and whose unit sales total in the hundreds of millions each year, can never be assured of a zero-percent failure rate. Indeed, it is difficult to imagine *any* product for which such a promise could or would be made. When manufacturers guarantee a product, they are not representing (and cannot reasonably be construed as representing) that no unit of the product will ever fail. To the contrary, they are implicitly recognizing the possibility that the product might fail and therefore undertaking as a contractual matter to provide a remedy in the event it does. Accepting plaintiff's contrary theory would transform this contractual remedy into a tort claim for consumer fraud or false advertising anytime any product failed prematurely. Plaintiff cites no case supporting such a result. And plaintiff does not—indeed cannot—allege that she or any putative class member has ever been denied the refund promised by Duracell's express guarantee. Her allegations therefore fail to state a claim.

Plaintiff tries to bolster her claim by repeatedly referring to Duracell's 2012 press release. Opp. at 1, 4-7, 9-13 (citing SAC ¶ 15). But she does not allege that she (or any class member) read or relied on that press release. For this reason alone, the press release does not support her claim. *Doe v. Successfulmatch.com*, No. 13-03376-LHK, 2014 WL 1494347, at *5 (N.D. Cal. Apr. 16, 2014) ("Plaintiffs must, at a minimum, allege that they actually viewed the representations that they now contend are misleading.").[3]

And the press release cannot in any event be construed as representing that Duracell batteries never fail (or, as plaintiff tries to suggest, as evidencing that Duracell intended any such representation). It merely announces DuraLock and the accompanying 10-year guarantee, using classic puffing language to explain that the DuraLock feature gives consumers a "power solution they can trust" and means they will "always have access to power when [they] need it." SAC

---

[3] Plaintiff points to her allegation that she "saw TV advertising, and heard radio advertising, regarding the DuraLock guarantee." Opp. at 3 (citing SAC ¶ 43). But she nowhere describes the contents of that advertising. And she does not claim to have seen or heard any press release.

¶ 15. This language is not actionable for the same reason similar language was found insufficient in *Elias v. Hewlett-Packard Co.,* 950 F. Supp. 2d 1123 (N.D. Cal. 2013), where the court granted a motion to dismiss a claim against advertising that stated the product "delivers the power you need" and that promised "ultra-reliable performance," "full power and performance," and a "versatile, reliable system."

Nor is plaintiff correct that her purported "reasonable" understanding of the meaning of "guarantee" must be accepted on this motion. Opp. at 11-12. Neither *Jou v. Kimberly-Clark Corp.*, No. 13-03075-JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013), nor any other case requires that a court blindly accept on motion to dismiss a plaintiff's allegation regarding the reasonable meaning of an advertisement. The law is to the contrary.[4]

Contrary to plaintiff's assertion, the meaning of "guarantee" does not depend on whether the Court accepts plaintiff's implausible theory that "storage" includes taking the batteries out of the package and putting them in a device. As discussed above, that theory is in fact groundless and is further reason to dismiss the complaint.[5] But even if plaintiff were correct on that point, the guarantee (whether interpreted as covering batteries in storage or batteries when put in devices) is still a guarantee, not a representation that Duracell batteries do not ever leak.

---

[4] *See Viggiano v. Hansen Natural Corp.*, No. 12-10747-MMM, 2013 WL 2005430, at *9 n.38 (C.D. Cal. May 13, 2013) (dismissing complaint because "a reasonable consumer would understand that a diet soda—even one with a label stating that it has 'all natural flavors'—contains artificial sweeteners"); *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (dismissing complaint where no reasonable consumer would conclude that "a cracker is . . . composed of primarily fresh vegetables . . . [merely] because the packaging boasts that the crackers are made with real vegetables and depicts vegetables"); *Hairston v. S. Beach Beverage Co.*, No. 12-1429-JFW, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) ("[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate.").

[5] This is true even without considering the instruction on the back of package that the batteries should be kept in the original package. The "in storage" limitation on the *front* of the package is by itself enough to show that guarantee did not cover batteries that were put in a device to be used.

1  II.    **PLAINTIFF'S UCL CLAIMS FOR UNLAWFUL AND UNFAIR**
2          **CONDUCT ALSO FAIL.**

3        Duracell's motion argued that plaintiff's claims under the UCL "unlawful" and "unfair"
4  prongs fail for the same reasons as her UCL "fraudulent" claim and her FAL and CLRA claims.
5  Mot. at 18-19.  Plaintiff's opposition confirms as much.  She asserts that she has stated an
6  "unlawful" claim because Duracell's alleged conduct violated the FAL and the CLRA.  Opp. at
7  15.  And she asserts that she has stated an "unfair" claim because Duracell allegedly "knowingly
8  concealed" that Duracell batteries may leak—*i.e.*, the same claim that plaintiff alleges under the
9  UCL fraudulent prong, the CLRA and the FAL.  *Id.*  Because the UCL "fraudulent" claim and the
10 FAL and CLRA claims fail for the reasons discussed above, this Court should dismiss the
11 "unfair" and "unlawful" claims as well, just as it did with respect to plaintiff's prior complaint.
12 *See* Order at 22-23.

13 III.   **PLAINTIFF HAS NOT ALLEGED A VALID CLAIM FOR "UNJUST**
14         **ENRICHMENT."**

15       Plaintiff likewise does not dispute that her unjust enrichment claim rises or falls with her
16 other claims.  Her only argument is that, because her other claims "should survive, so should the
17 Unjust Enrichment claim."  Opp. at 16.  As it did before (Order at 24-25), this Court should
18 accordingly dismiss the unjust enrichment claim along with the rest of plaintiff's complaint.

19 IV.    **PLAINTIFF'S WARRANTY CLAIM IS MERITLESS.**

20       Plaintiff argues that her "particular" purpose in buying batteries was "use or storage of
21 Duracell batteries for 10 years without failure."  Opp. at 17.  She contends this use is different
22 from the "ordinary" purchase of batteries without such a guarantee.  *Id.*  This argument mixes
23 apples and oranges.  She is comparing her purported purpose in buying the batteries with the
24 question whether the batteries offer a guarantee that covers her intended use.  The issue, however,
25 is the consumer's intended ***purpose***, not whether that use is guaranteed.  And plaintiff alleges no
26 facts showing that her purpose in buying batteries (using or storing them without failure during
27 the warranty period) is any different from the ordinary purpose for which consumers generally
28

buy batteries—*i.e.*, no facts showing that consumers ordinarily do not buy batteries to use or store them without failure for the warranty period. She has thus failed to state a valid warranty claim.

Plaintiff also repeats her earlier argument that the existence of an implied warranty is a question of fact to be decided by the jury. Opp. at 18. This Court previously rejected this argument (Order at 27), and should do so again.

## V. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiff does not request leave to further amend her complaint. Nor does she identify any additional facts she could allege that would cure the complaint's defects. She has twice amended her complaint, including after receiving Duracell's first motion to dismiss and this Court's order granting that motion. If she had any facts that could support her claim, she was obligated to set them out in her SAC. Her failure to do so means her complaint should be dismissed with prejudice. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (affirming denial of leave of amend where plaintiffs had previously amended the complaint and failed to identify what new facts they would add if given further leave).

## CONCLUSION

Plaintiff's Second Amended Complaint should be dismissed with prejudice.

Dated: October 19, 2015.        JONES DAY

By: /s/ Craig E. Stewart
    Craig E. Stewart

Counsel for Defendants THE GILLETTE COMPANY and THE PROCTER & GAMBLE CO.

NAI-1500594485v1