1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

RENEE PUNIAN,

              Plaintiff,

13

14
      v.

15
THE GILLETTE COMPANY and
THE PROCTER & GAMBLE COMPANY,

16

            Defendants.

17

Case No. 14-CV-05028-LHK

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS WITH
PREJUDICE**

Re: Dkt. No. 49

18

      Plaintiff Renee Punian brings this putative class action against Defendants The Gillette

19
Company ("Gillette") and The Procter & Gamble Company ("P&G") (collectively, "Defendants").

20
for alleged deceptive advertising for Duracell Coppertop AA and AAA batteries.  *See* ECF No. 46

21
(Second Amended Complaint, or "SAC").  Before the Court is Defendants' motion to dismiss.

22
ECF No. 49.  Having considered the submissions of the parties, the relevant law, and the record in

23
this case, the Court hereby GRANTS Defendants' motion to dismiss with prejudice.

24
**I.      BACKGROUND**

25
    **A.  Factual Background**

26
      Plaintiff is a resident of San Jose, California.  SAC ¶ 4.  P&G is an Ohio corporation with

27
its principal place of business in Cincinnati, Ohio.  *Id.* ¶ 5.  Gillette is a Delaware corporation with

28

United States District Court
Northern District of California

its principal place of business in Boston, Massachusetts.  *Id.* ¶ 6.  On April 21, 1999, Gillette acquired Duracell, Inc. ("Duracell"), which manufactures and sells batteries.  *Id.* ¶¶ 10–11.  On October 1, 2005, P&G acquired Gillette, including the Duracell-branded battery line.  *Id.* ¶ 11.  Duracell currently operates as a division of P&G, and P&G continues to use the Duracell brand name for its line of consumer batteries.  *Id.* ¶¶ 10–11.  In 2013, Duracell batteries constituted approximately 25% of the $11 billion consumer battery market in the United States.  *Id.* ¶ 12.

At issue in the instant litigation is a feature known as the "Duralock Power Preserve Technology" ("Duralock"), which Defendants launched on June 1, 2012.  *Id.* ¶ 14.  Batteries with Duralock are marked with a "Duralock ring," and guaranteed to last for 10 years while in storage.  *Id.*  Defendants implemented Duralock in a number of battery lines, including Coppertop, Ultra Power, and Ultra Advance.  *See id.* ¶¶ 45–46.  In the SAC, Plaintiff focuses solely on Coppertop AA and AAA-sized batteries with Duralock ("Duralock Batteries").

Since the launch of Duralock, the front of the packaging for Duralock Batteries has prominently included the statements "Duralock Power Preserve" and "GUARANTEED for 10 YEARS in storage."  *See* ECF No. 49-1, Decl. of Scott Stewart ("Stewart Decl.") ¶ 2 ("If a consumer purchased any pack (of any number of batteries) of [Duralock Batteries] at any time since mid-2012 to the present, the above quoted language was on the battery pack."); SAC ¶ 16 (examples of two packages of Duralock Batteries); ECF No. 49-1 (Request for Judicial Notice, or "RJN") (examples of packaging for Duralock Batteries).  The back of some, but not all, Duralock Batteries' packaging has also included the same "GUARANTEED for 10 YEARS in storage" language.  *See* RJN.  During the putative class period, each individual battery has stated a date ten years in the future as a representation of the date before which the battery is guaranteed not to fail. SAC ¶ 19.

The launch of Duralock was to be accompanied by "Duracell's largest marketing campaign in history."  *Id.* ¶ 15.  One national commercial, which ran over 1,000 times until April 2013, stated: "Duracell Power Preserve that locks in power up to ten years in storage—guaranteed. Duracell with Duralock—Trusted everywhere."  *Id.* ¶ 18.  Another commercial, which allegedly

Case No. 14-CV-05028-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1   ran on both television and radio, advertised: "It just has to work.  Duracell.  Trusted Everywhere."

2   *Id.*  The June 1, 2012 press release announcing Duralock stated that "Duralock's up to 10-year

3   guarantee means that you will always have access to power when you need it—even if your

4   batteries have been in storage for years."  *Id.* ¶ 15.

5       According to Plaintiff, the advertising and packaging for Duralock Batteries is misleading

6   in two ways.  First, Plaintiff alleges that, despite Defendants' affirmative representation that

7   Duralock Batteries will not fail for up to ten years in storage, Duralock Batteries "may leak when

8   used or stored in a normal and expected manner."  *Id.* ¶ 20.  Second, Plaintiff alleges that

9   Defendants "failed to disclose that its Duracell Batteries leak when not in use and the leakage can

10  damage any device that the batteries are stored in."  *Id.* ¶ 21.  Although packaging for Duralock

11  Batteries states, "Caution: May explode or leak, and cause burn injury, if recharged, disposed of in

12  fire, mixed with different battery type, inserted backwards or dissembled," the packaging does not

13  include a warning that batteries may leak even when used in a normal manner.  *Id.* ¶¶ 17, 20.

14      Defendants allegedly "had prior notice and prior knowledge of the defect in these batteries

15  . . . i.e., leakage in its AA and AAA batteries under normal conditions of use intended by

16  Defendants."  *Id.* ¶ 24.  Plaintiff points to "numerous complaints and reviews" posted on

17  Defendants' website, as well as on social media sites like Twitter, Facebook, Youtube, and other

18  websites which Defendants allegedly monitor, where customers described leaking in Defendants'

19  batteries.  *Id.* ¶¶ 25–26, 33–36, 38, Ex. 1.  Additionally, a significant customer allegedly reported

20  to Defendants that the customer had a leakage problem with 51,750 out of 110,000 batteries in

21  2012 or 2013.  *Id.* ¶ 28.  Plaintiff also notes that Defendants admitted, in another federal court

22  case, that "all alkaline batteries have the potential to leak."  *Id.*¶ 27.  Plaintiff further highlights

23  Defendants' submissions to the United States Patent and Trademark Office between 1989 and

24  2004, which reveal Defendants' awareness that batteries may leak.  *Id.* ¶ 39.  Finally, Plaintiff

25  alleges that Defendants performed internal testing of Duralock Batteries that, on information and

26  belief, revealed that Duralock Batteries could and did leak.  *Id.* ¶¶ 29–32.

27      Plaintiff purchased Duralock Batteries at "various times" for more than four years, most

28  

United States District Court
Northern District of California

3

recently on August 15, 2014 at a retailer in San Jose, California. *Id.* ¶ 42.  Before purchasing the batteries, Plaintiff allegedly "saw the deceptive '10 Years Guaranteed' package label, saw TV advertising, and heard radio advertising regarding the Duralock guarantee and believed that the Duracell Batteries would not fail for ten years." *Id.* ¶ 43.  At the time of purchase, Plaintiff "did not know that the Duracell Batteries, despite their premium price, could leak even if used as intended." *Id.*  Plaintiff avers that had she "known of the Duracell Batteries' potential to fail, leak and/or damage Plaintiff's electronics," Plaintiff would not have purchased Duralock Batteries. *Id.*; *see also id.* ¶ 23 (alleging that Duralock Batteries "retail at a premium price compared to similarly sized AA and AAA batteries of competitors' products, which Plaintiff would have purchased instead of the Duracell Batteries if Plaintiff had been informed or known of potential failure due to leakage").  Plaintiff does not allege that any of the Duralock Batteries that she purchased have leaked.

### B. Procedural History

On November 13, 2014, Plaintiff filed a putative class action lawsuit with seven causes of action.  ECF No. 1.  On January 20, 2015, Plaintiff filed the First Amended Complaint, which added additional factual allegations but left Plaintiff's causes of action unchanged.  *See* ECF No. 21.  Plaintiff alleged violations of California's False Advertising Law ("FAL"), Cal. Civ. Code §§ 17500, *et seq.*; California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; and the fraudulent, unlawful, and unfair prongs of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq. Id.*¶¶ 40–79.  Plaintiff also asserted causes of action for unjust enrichment and breach of implied warranty of fitness for a particular purpose.  *Id.* ¶¶ 80–91.

On August 20, 2015, the Court granted Defendants' motion to dismiss with leave to amend.  ECF No. 43.  The Court concluded that Plaintiff failed to sufficiently allege that Defendants had knowledge of any defect in the Duracell Coppertop batteries with Duralock, which was fatal to Plaintiff's claims under the FAL, the CLRA, and the unlawful prong of the UCL.  *Id.* at 17–21.  The Court then dismissed Plaintiff's claims under the unfair and fraudulent prongs of

4

the UCL because the claims overlapped entirely with the inadequately-pled FAL and CLRA

claims.  *Id.* at 23–24.  Because an unjust enrichment claim is not an independent claim for relief,

and the Court had dismissed the underlying causes of action, the Court also dismissed Plaintiff's

unjust enrichment claim.  *Id.* at 24–25.  Finally, the Court dismissed Plaintiff's claim for breach of

implied warranty because Plaintiff failed to allege the "intended purpose" for the batteries in

question or that Defendants were aware of that intended purpose.  *Id.* at 25–27.  The Court

dismissed all of Plaintiff's claims with leave to amend, but noted that "failure to cure the

deficiencies identified in this Order[] will result in a dismissal with prejudice."  *Id.* at 27.

On September 10, 2015, Plaintiff filed the SAC, which reasserted all seven of Plaintiff's

causes of action.  ECF No. 46.  As before, Plaintiff seeks to represent two classes: (1) "All

purchasers in California who bought Duracell Coppertop AA and AAA batteries with Duralock

beginning June 1, 2012 through the date of notice"; and (2) a subclass under the CLRA of "All

Class members who purchased Duracell Coppertop AA and AAA batteries with Duralock

beginning June 1, 2012 through the date of notice for personal, family or household purposes."  *Id.*

¶ 44–45; *see also id.* ¶ 46 (listing certain exclusions from the classes).  The classes exclude

purchasers of Duracell Ultra Power or Ultra Advance AA or AAA batteries.  *Id.* ¶ 46.  The classes

also exclude purchasers of Duracell Coppertop batteries in sizes other than AA or AAA, such as

sizes C or D.  *See id.* ¶ 45.

Defendants filed the instant motion to dismiss the SAC and a corresponding request for

judicial notice on September 28, 2015.  ECF Nos. 49 ("Mot."); 49-1.  Plaintiff opposed the motion

to dismiss on October 12, 2015.  ECF No. 52 ("Opp.").  Defendants replied on October 19, 2015.

ECF No. 53.  On November 11, 2015, Defendants filed a statement of recent decision highlighting

the dismissal by the United States District Court for the District of Massachusetts of virtually

identical deceptive-labeling claims against Defendants.  ECF No. 54 (citing *Carlson v. Gillette

Co.*, No. 14-14201-FDS, 2015 WL 6453147 (D. Mass. Oct. 23, 2015)).

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6) Motion to Dismiss

5

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## B. Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the

Case No. 14-CV-05028-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

1  charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d

2  727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the time,

3  place, and specific content of the false representations as well as the identities of the parties to the

4  misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)

5  (internal quotation marks omitted).  "A plaintiff must set forth what is false or misleading about a

6  statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)

7  (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216

8  (9th Cir. 2011).  However, "intent, knowledge, and other conditions of a person's mind" need not

9  be stated with particularity, and "may be alleged generally."  Fed. R. Civ. P. 9(b).

10 **C. Leave to Amend**

11    If the Court concludes that the complaint should be dismissed, it must then decide whether

12 to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to

13 amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

14 of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

15 technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

16 marks omitted).  Nonetheless, a district court may deny leave to amend a complaint due to "undue

17 delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

18 by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

19 of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512

20 F.3d 522, 532 (9th Cir. 2008).

21 **III.    DISCUSSION**

22    The Court first addresses Plaintiff's claims under the FAL, the CLRA and the fraudulent

23 prong of the UCL, which overlap substantially.  The Court next considers Plaintiff's claims under

24 the unlawful and unfair prongs of the UCL, and then Plaintiff's unjust enrichment claim.  The

25 parties do not dispute that these claims all sound in fraud and are therefore subject to the

26 heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See* Fed. R. Civ. P.

27 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

28

constituting fraud or mistake.  Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."); *Vess v. Ciba-Geiby Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (noting that Rule 9(b) applies to claims "grounded in fraud"); *see also Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2015 WL 4967535, at *10 (N.D. Cal. Aug. 20, 2015) (finding Plaintiff's FAL, CLRA, and UCL claims subject to Rule 9(b)).  Lastly, the Court considers Plaintiff's claim for breach of an implied warranty of fitness for a particular purpose, which does not sound in fraud and thus must meet the pleading standard of Federal Rule of Civil Procedure 8(a).  *See Punian*, 2015 WL 4967535, at *14 (concluding Rule 9(b) did not apply to Plaintiff's breach of implied warranty claim).

### A.  Judicial Notice

As a preliminary matter, the Court addresses Defendants' request for judicial notice.  The Court may take notice of facts not subject to reasonable dispute that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b). Additionally, under the doctrine of incorporation by reference, the Court may consider on a Rule 12(b)(6) motion not only documents attached to the complaint, but also documents whose contents are alleged in the complaint, provided the complaint "necessarily relies" on the documents or contents thereof, the documents' authenticity is uncontested, and the documents' relevance is uncontested.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Here, Defendants request judicial notice of photographs of the front and back packaging of twelve different packages of Duralock Batteries.  *See* RJN.  In support of this request, Defendants submit a declaration that the statements "DuraLock Power Preserve," "Guaranteed for 10 Years in storage," and "Keep in package until ready to use" have appeared on every package of Duralock Batteries sold since June 1, 2012, the beginning of the putative class period.  *See* Stewart Decl. ¶ 2.  The photographs exemplify how the quoted language has appeared on Duralock Batteries' packaging, although the package artwork, graphics, formatting, and other language have changed over the years.  *Id.* ¶¶ 2, 4.

The SAC discusses the front and back of Duralock Batteries' packaging.  *See* SAC ¶¶ 16–

8

17, 20–22, 57, 89.  Additionally, the SAC includes photographs of the front of two packages of Duralock Batteries (for two AA-sized batteries, and for sixteen AA-sized batteries) as "[e]xamples of the relevant packaging."  *See id.* ¶ 16.  Defendants' request for judicial notice includes photographs of the back of the packaging for the two exemplars in the SAC, as well as photographs of the front and back packaging for Duralock Batteries sold in different numbers during the putative class period.  Plaintiff does not dispute the authenticity or relevance of the photographs offered by Defendants.  Further, Plaintiff's claims under the FAL, the CLRA, and the UCL "necessarily rel[y]" upon statements made on or omitted from all packaging for Duralock Batteries, including the statement "GUARANTEED for 10 YEARS in storage."  *See id.* ¶¶ 55–94.  Accordingly, the Court finds that the photographs reflecting Duralock Batteries' packaging are incorporated by reference in the SAC and GRANTS Defendants' unopposed request for judicial notice.  *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (judicial notice is appropriate if "the document's authenticity is not in question and there are no disputed issues as to the document's relevance").

### B. Plaintiff's Claims under the FAL, the CLRA, and the Fraudulent Prong of the UCL

#### 1. Statutory Framework

The FAL, the CLRA, and the fraudulent prong of the UCL each prohibit false or misleading advertising.  Specifically, the FAL prohibits the dissemination of any statement concerning property or services "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.  The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  One practice proscribed by the CLRA is "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another."  *Id.* § 1770(a)(7).

The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  Each "prong" of the UCL provides a separate

Case No. 14-CV-05028-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    and distinct theory of liability.  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th

2    Cir. 2007).  Plaintiff asserts claims under all three prongs.  Generally, a violation of the FAL or

3    the CLRA is also a violation of the fraudulent prong of the UCL.  *See In re Tobacco II Cases*, 46

4    Cal. 4th 298, 312 n.8 (2009); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th

5    1351, 1360 (2003).

6         Under all three statues—the FAL, the CLRA, and the fraudulent prong of the UCL—

7    conduct is considered deceptive or misleading if the conduct is "likely to [] deceive[]" a

8    "reasonable consumer."  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

9    Because the same standard governs all three statutes, courts often analyze the three statutes

10   together.  *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig. ("Sony

11   Gaming Networks")*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014); *In re Sony Grand Wega KDF-E

12   A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1090 (S.D. Cal.

13   2010); *Consumer Advocates*, 113 Cal. App. 4th at 1360–62.  The parties do not dispute that

14   Plaintiff's claims under the FAL, the CLRA, and the fraudulent prong of the UCL rise or fall

15   together.  Accordingly, the Court considers these three claims together.

16        Sellers may deceive a reasonable consumer under the FAL, the CLRA, and the UCL

17   through affirmative misrepresentations as well as failures to disclose defects in a product.  *See

18   Sony Gaming Networks*, 996 F. Supp. 2d at 991; *Baba v. Hewlett-Packard Co.*, No. C 09-05946

19   RS, 2010 WL 2486353, at *3 (N.D. Cal. June 16, 2010).  In the instant case, Plaintiff alleges that

20   Defendants: (1) affirmatively misrepresented that Duralock Batteries would not fail for ten years,

21   and (2) failed to disclose that Duralock Batteries have the potential to leak even during normal and

22   expected use.  The Court addresses these theories in turn.

23        **2.  Defendants Did Not Make Affirmative Misrepresentations About the Potential of
          Duralock Batteries to Leak**

24        Plaintiff alleges that Defendants affirmatively represented that Duralock Batteries would

25   not leak or otherwise fail for ten years.  Specifically, Plaintiff points to the following three

26   statements in Defendants' press release, advertisements, and packaging:  (1) Duralock Batteries

27

28                                                          10

United States District Court
Northern District of California

are "GUARANTEED for 10 YEARS in storage" (the "Duralock guarantee"); (2) purchasing Duralock Batteries "means that you will always have access to power" when needed; and (3) Duralock Batteries are "a power solution [consumers] can trust." Opp. at 5–6, 10–11. Plaintiff asserts that these three statements are likely to mislead a reasonable consumer because Duralock Batteries have the potential to leak and thus cannot be trusted.

Defendants counter that the Duralock guarantee is an express warranty, not a promise that Duralock Batteries have no potential to leak for ten years in storage. Mot. at 15–16. Because Plaintiff offers no evidence that Defendants do not expressly warrant Duralock Batteries, Defendants say, Plaintiff fails to show that the Duralock guarantee is likely to deceive a reasonable consumer. Defendants argue that the second and third statements are nonactionable puffery. *Id.* at 17–18. The Court addresses Defendants' arguments in turn.

### a. The First Alleged Affirmative Misrepresentation, the Duralock Guarantee, Is Not Likely to Deceive a Reasonable Consumer

Plaintiff argues that the Duralock guarantee "gave reasonable consumers the impression that [Duralock Batteries] would not leak during a ten year period when used in a normal and expected manner," when Duralock Batteries actually do have the potential to leak. Opp. at 3, 10–14; *see also* SAC ¶ 22 (alleging that "a reasonable consumer would likely be misled into believing that Duracell Coppertop batteries with Duralock will last for 10 years without leakage"). Defendants respond that the Duralock guarantee is an express warranty, not a promise that Duralock Batteries have absolutely no potential to leak. Mot. at 15–16. Accordingly, Defendants argue that no reasonable consumer would be misled by the batteries' packaging into believing that Duralock Batteries have no potential to leak for ten years in storage.

Taking the factual allegations in the complaint as true—as the Court must on a motion to dismiss, *see Manzarek*, 519 F.3d at 1031—the Court assumes that Duralock Batteries have the potential to leak even when used or stored in a normal and expected manner. Even so, however, the Court agrees with Defendants that the Duralock guarantee is not an actionable affirmative misrepresentation. In California, the use of the term "guarantee" generally creates an express

Case No. 14-CV-05028-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

warranty.  *See* Cal. Civ. Code § 1791.2(b) ("It is not necessary to the creation of an express warranty that formal words such as . . . 'guarantee' be used, but if such words are used then an express warranty is created."); Cal. Com. Code § 2313 (noting that creation of an express warranty does not require the seller to use formal words such as "guarantee").  An express warranty is not a representation that a product has no defects, but rather a promise to repair, replace, or refund a failed product.  *See Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007) ("Plaintiffs seek to bootstrap Sony's express warranty into a representation that the VAIO notebooks are defect-free . . . . Nothing in the warranty expressly or impliedly warrants that the computer will be defect-free either during the warranty period or thereafter.").  A reasonable consumer would understand the Duralock guarantee as a promise to repair, replace, or refund a battery that is in storage and fails within ten years of purchase—not as a promise that Duralock Batteries have no potential to leak.

This interpretation of the Duralock guarantee comports with the common understanding of the term "guarantee."  *See* Cambridge Dictionaries Online, http://dictionary.cambridge.org/us/ dictionary/english/guarantee (last accessed March 15, 2016) (defining "guarantee" as "a promise that something will be done or will happen, esp. a written promise by a company to repair or change a product that develops a fault within a particular period of time"); Black's Law Dictionary (10th ed. 2014) ("In practice, *guarantee*, n., is the usual term, seen often, for example, in the context of consumer warranties or other assurances of quality or performance.").  Plaintiff herself alleges that Duralock Batteries "were *warranted* for ten years" by Defendants.  SAC ¶ 1 (emphasis added).

Moreover, the United States District Court for the District of Massachusetts interpreted the Duralock guarantee in the same manner in *Carlson v. Gillette Co.*, 2015 WL 6453147 (D. Mass. Oct. 23, 2015).  In *Carlson*, the same plaintiff's counsel as in the instant case brought suit against Defendants for committing "unfair or deceptive acts or practices in the conduct of any trade or commerce" in violation of Massachusetts General Laws ch. 93A.  2015 WL 6453147, at *1, *4.

United States District Court
Northern District of California

The *Carlson* plaintiffs alleged that Duralock Batteries[1] "sometimes leak when not in use, and that defendants therefore (1) falsely stated that the batteries would not leak or otherwise fail within the first ten years after purchase and (2) failed to disclose that the batteries had the potential to leak." *Id.* at *1. The *Carlson* court determined that the Duralock guarantee was not an affirmative misrepresentation because the Duralock guarantee would be understood as an express warranty. As persuasively explained by the *Carlson* court:

> [T]he statement that Duracell batteries are "guaranteed for 10 years in storage" is simply not a promise that the batteries have no potential whatsoever to leak or otherwise fail within that time. All consumer products, indeed all manufactured products, have *some* propensity to fail. . . . A "guarantee" is not a promise of perfection. No reasonable consumer would believe otherwise. Nor is a "guarantee" a statement of the current condition of the product, such as a promise that the batteries are made from certain materials or according to certain manufacturing methods.
>
> Instead, a "guarantee" is a promise by the manufacturer that if the product does not perform as anticipated, the company will repair or replace the product or refund the purchase price (and, under some circumstances, pay damages). Put another way, a "guarantee" is a form of express warranty.

*Carlson*, 2015 WL 6453147, at *5 (internal citations omitted). Similarly, the Court concludes that no reasonable consumer would understand the Duralock guarantee as a promise that Duralock Batteries have no potential to leak for ten years in storage.

Plaintiff counters with three arguments. First, Plaintiff claims that the Duralock guarantee cannot be an express warranty because the guarantee does not use the phrase "or your money back." Opp. at 11. However, Plaintiff provides no authority that express warranties are created only when the seller uses the phrase "money back." In fact, as stated above, the use of the term "guarantee" alone may establish an express warranty. *See* Cal. Civ. Code § 1791.2 (providing that use of the word "guarantee" in certain consumer sales creates an express warranty); Cal. Com. Code § 2313 (providing that formal warranty-creating words like "guarantee" are not necessary to

---

[1] As in the instant case, the *Carlson* plaintiffs sought to represent a class of individuals who purchased Duracell Coppertop AA and AAA batteries with Duralock technology beginning June 1, 2012. *Carlson*, 2015 WL 645147, at *2 n.1. However, the *Carlson* plaintiffs limited their asserted class to "purchasers in Massachusetts," *id.*, while the putative class in the instant case is limited to "purchasers in California," SAC ¶ 44.

13

United States District Court
Northern District of California

1  create an express warranty).  Second, Plaintiff argues that Defendants' advertising contradicts the

2  interpretation of the Duralock guarantee as an express warranty because a 2012 press release states

3  that "Duralock's guarantee *means* that you will *always have access to power* when you need it."

4  Opp. at 11 (emphasis in original).  As discussed below, the Court finds this statement by

5  Defendants to be nonactionable puffery.

6          Third, Plaintiff argues that the Court is bound to accept Plaintiff's "reasonable

7  interpretation of the label's meaning."  Opp. at 11–12.  Whether a business practice is deceptive

8  "will usually be a question of fact not appropriate for decision on demurrer."  *Williams*, 552 F.3d

9  at 938.  However, numerous courts have found as a matter of law that a representation is not likely

10  to deceive a reasonable consumer.  *See, e.g.*, *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F.

11  App'x 113, 115 (9th Cir. 2012) (affirming dismissal with prejudice of FAL, CLRA, and UCL

12  claims because no reasonable consumer would be misled by the product's packaging); *Kent v.*

13  *Hewlett-Packard Co.*, No. No. 09-5341 JF(PVT), 2010 WL 2681767, at *8 (N.D. Cal. July 6,

14  2010) (concluding that the warranty "did not guarantee that the operation of the computers in suit

15  would be 'uninterrupted or error-free.'  Instead, HP warranted that it would offer repairs,

16  replacements, or refunds in the event that defects did manifest during the warranty period"); *Hoey*,

17  515 F. Supp. 2d at 1104 (concluding that the defendant's express warranty was not a promise that

18  the product was defect-free); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 834,

19  837 n.6 (2006) (finding that press releases were not misleading affirmative representations

20  because, among other issues, "a recall of some vehicles cannot reasonably be interpreted as a

21  representation that other vehicles are not defective").  As the Ninth Circuit has affirmed, a

22  "representation does not become 'false and deceptive' merely because it will be unreasonably

23  misunderstood by an insignificant and unrepresentative segment of the class of persons to whom

24  the representation is addressed."  *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir.

25  2012) (quoting *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 507 (2003)).  In the instant

26  case, no reasonable consumer would interpret the Duralock guarantee as anything other than an

27

28

Case No. 14-CV-05028-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

1    express warranty.[2]

2         Plaintiff also argues that Duralock Batteries are "in storage" whenever the batteries are not

3    actively in use.  Opp. at 13.  Thus, Plaintiff says, any allegations in the SAC that Duralock

4    Batteries leak while stored in devices, or while stored in the packaging, show that the Duralock

5    guarantee is deceiving.  However, the Court concludes above that a reasonable consumer would

6    not interpret the Duralock guarantee as a promise that Duralock Batteries have no potential to leak

7    for ten years in storage.  Accordingly, the potential of Duralock Batteries to leak in storage,

8    regardless of how storage is defined, does not determine whether the Duralock guarantee is likely

9    to mislead reasonable consumers.

10        In sum, the Duralock guarantee is not "likely to deceive" a reasonable consumer into

11   believing that Duralock Batteries have no potential to leak for ten years in storage.  Consequently,

12   the Court finds that Plaintiff fails to allege an affirmative misrepresentation based upon the

13   Duralock guarantee.

### b. Defendants' Statements that the Purchase of Duralock Batteries "Means That You Will Always Have Acess to Power" and that Duralock Batteries Are "A Power Solution [Consumers] Can Trust" Are Nonactionable Puffery

16        Defendants argue that the following affirmative representations highlighted by Plaintiff are

17   nonactionable puffery: (1) the purchase of Duralock Batteries "means that you will always have

18   access to power" when needed; and (2) Duralock Batteries are "a power solution [consumers] can

19   trust."  Plaintiff counters that the statements are not puffery because the statements occurred

20   within an advertising campaign suggesting that Duralock Batteries supply reliable power to

21   essential services.  *See* Opp. at 12 n. 6.

22        Puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable

23   buyer would rely."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).

24

25   [2] The Court expresses no opinion on whether Plaintiff could bring a claim for breach of express
     warranty based on the Duralock guarantee.  However, the SAC alleges no facts to suggest that
26   Defendants do not actually warrant Duralock Batteries.  *See generally* SAC; *see also Twombly*,
     550 U.S. at 570 (noting that, to survive a motion to dismiss, a plaintiff must state "enough facts to
27   state a claim to relief that is plausible on its face").  Nor does Plaintiff allege that any Duralock
     Batteries that Plaintiff purchased have leaked.  *See generally* SAC.

28
Case No. 14-CV-05028-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1  "The common theme that seems to run through cases considering puffery in a variety of contexts

2  is that consumer reliance will be induced by specific rather than general assertions." *Cook,*

3  *Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).

4  Consequently, "[a]dvertising which merely states in general terms that one product is superior is

5  not actionable.  However, misdescriptions of specific or absolute characteristics of a product are

6  actionable." *Id.* (internal quotation marks and citations omitted).  For example, in *Consumer*

7  *Advocates*, 113 Cal. App. 4th at 1361, the California Court of Appeal found that the descriptions

8  of a satellite television system as possessing "crystal clear digital video" and "CD-quality audio"

9  were nonactionable, as the representations were nothing more than "boasts, all-but-meaningless

10  superlatives," and "claim[s] which no reasonable consumer would take as anything more weighty

11  than an advertising slogan."  However, the California Court of Appeal found that further

12  statements that the system would allow consumers to receive 50 channels and to view television

13  schedules seven days in advance were "factual representations" that were sufficient to raise triable

14  issues.  *Id.* at 1361–62.

15      Here, the Court agrees with Defendants that the two statements are puffery.  *See Newcal*

16  *Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("[T]he determination of

17  whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal

18  question that may be resolved on a Rule 12(b)(6) motion.").  Generalized statements that a

19  consumer "will always have access to power" when needed and can "trust" Duralock Batteries say

20  nothing about the specific characteristics or leakage rate of Duralock Batteries.  Rather, these

21  statements are vague product superiority claims that are no more "weighty than an advertising

22  slogan." *See Consumer Advocates*, 113 Cal. App. 4th at 1361.  Even in the context of a broader

23  advertising campaign, a reasonable consumer would not interpret either of the two statements as

24  "a factual claim upon which he or she could rely" about the potential for leakage of Duralock

25  Batteries.  *Cook*, 911 F.2d at 246; *see also Elias v. Hewlett-Packard Co. ("Elias II")*, 950 F. Supp.

26  2d 1123, 1134 (N.D. Cal. 2013) ("[T]he combination of several 'puff' statements does not

27  automatically create an actionable misrepresentation.").  Indeed, courts have found similar

28

16

statements to be nonactionable puffery, including that a product "delivers the power you need," has "ultra-reliable performance," and provides a "versatile, reliable system." *See Elias v. Hewlett-Packard Co. ("Elias I")*, 903 F. Supp. 2d 843, 854–55 (N.D. Cal. 2012); *see also L.A. Taxi Cooperative, Inc. v. Uber Tech., Inc.*, 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015) (finding that the statement "BACKGROUND CHECKS YOU CAN TRUST" is puffery because it is "a general, subjective statement that makes no specific claim about [the defendant's] services").

Accordingly, Defendants' representations that consumers "will always have access to power" and can "trust" Duralock Batteries are nonactionable puffery. Plaintiff thus fails to state any claims for affirmative misrepresentation under the FAL, the CLRA, or the fraudulent prong of the UCL.

### 3. Defendants Did Not Fraudulently Fail to Disclose Duralock Batteries' Potential to Leak

Plaintiff claims that Defendants violated the FAL, the CLRA, and the fraudulent prong of the UCL by failing to disclose that Duralock Batteries "may leak when used or stored in a normal and expected manner," and "that the batteries can leak and ruin electronic devices." SAC ¶¶ 20–22; *see also id.* ¶ 43 ("Plaintiff did not know that the Duracell Batteries, despite their premium price, could leak even if used as intended."). In contrast to Plaintiff's affirmative misrepresentation theory, which turned partly on Defendants' statement that Duralock Batteries are "GUARANTEED for 10 YEARS *in storage*," Plaintiff's nondisclosure theory asserts that Defendants should have disclosed that Duralock Batteries may leak when stored *or used* in a normal and expected manner. According to Plaintiff, Defendants' failure to disclose the potential for Duralock Batteries to leak during normal storage or use is misleading because consumers pay a premium price for Duralock Batteries without knowledge of the "undisclosed likelihood of premature leakage and corrosion." *Id.* ¶ 2.

For an omission to be actionable under the FAL, the CLRA, and the fraudulent prong of the UCL, the "omission must be . . . 'of a fact the defendant was obliged to disclose.'" *Sony Gaming Networks*, 996 F. Supp. 2d at 991 (quoting *Daugherty*, 144 Cal. App. 4th at 835); *see also*

United States District Court
Northern District of California

1   *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) ("[A] failure to

2   disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the

3   meaning of the UCL." (quoting *Daugherty*, 144 Cal. App. 4th at 838)).  A duty to disclose arises:

4   "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had

5   exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively

6   conceals a material fact from the plaintiff; and (4) when the defendant makes partial

7   representations but also suppresses some material fact." *Falk v. Gen. Motors Corp.*, 496 F. Supp.

8   2d 1088, 1095 (N.D. Cal. 2007) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).[3]

9          Plaintiff alleges that Defendants' nondisclosure is actionable on the third ground: active

10   concealment of a material fact.[4]  Specifically, Plaintiff alleges that "Defendants concealed and

11   misrepresented material facts concerning potential battery leakage."  *See, e.g.*, SAC ¶ 2.  Below,

12   the Court discusses the requirements to plead a duty to disclose arising from active concealment of

13   a material fact.  The Court then addresses whether Plaintiff has sufficiently alleged that

14

15   _____

16   [3] For defects that manifest after the expiration of a product's warranty period, courts have also
     required the defect to pose a safety concern before finding a duty to disclose.  *See Daughtery*, 144
     Cal. App. 4th at 836; *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008).
17   However, federal courts have found a duty to disclose defects unrelated to safety when the defect
     manifests during the warranty period.  *See Elias II*, 950 F. Supp. 2d at 1136 ("Plaintiff may allege
18   fraudulent omissions beyond safety-related concerns if those omissions led to malfunctions during
     the warranty period."); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1142 n.1, 1143
19   (9th Cir. 2012) (distinguishing cases in which the defect manifested within the warranty period).
     Although the SAC does not allege that Duralock Batteries leak within any specific time frame,
20   two customer complaints indicate that Duralock Batteries leaked within the ten-year period
     covered by the Duralock guarantee.  *See* SAC ¶ 36 (Facebook post stating that batteries with "Dec
21   2023" expiration dates leaked); *id.* Ex. 1 at 14 (Post by "MikeZ" complaining that "a never used
     battery, labeled 'Dec 2022' has already failed").  Defendants do not argue that the alleged defect
22   in Duralock Batteries must pose a safety risk in order for Plaintiff to allege a duty to disclose.
     Reading the complaint in the light most favorable to Plaintiff, the Court assumes that Duralock
23   Batteries have the potential to leak within ten years of purchase.
     [4] Although Plaintiff does not argue this expressly, Plaintiff may also be alleging that Defendants
24   made misleading partial representations.  However, partial representation claims require
     affirmative representations, which are rendered misleading because qualifying information is
25   withheld.  *See, e.g.*, *Warner Constr. Corp. v. City of L.A.*, 2 Cal. 3d 285, 294 (1970) (holding that
     a partial representation claim may arise when "the defendant makes representations but does not
26   disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to
     mislead"); *Roddenberry v. Roddenberry*, 44 Cal. App. 4th 634, 666 (1996) (same).  Because the
27   Court finds that the alleged affirmative representations by Defendants are not actionable, Plaintiff
     cannot proceed on the basis of misleading partial representations.

28                                                                          18
     Case No. 14-CV-05028-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

Defendants had a duty to disclose the alleged leakage in Duralock Batteries.

### a.  Duty to Disclose Based on the Active Concealment of a Material Fact

To state a duty to disclose arising from active concealment, a plaintiff must allege five

elements:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Falk*, 496 F. Supp. 2d at 1097 (quoting *Lovejoy v. AT & T Corp.*, 119 Cal. App. 4th 151, 157

(2004)).  As a threshold matter, Plaintiff must aver (1) the existence of a material fact (2) of which

Defendant was aware.  *See Elias v. Hewlett-Packard Co. ("Elias III")*, No. 12-CV-00421-LHK,

2014 WL 493034, at *6 (N.D. Cal. Feb. 5, 2014) (citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d

1136, 1145 (9th Cir. 2012); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011)).

Previously, the Court dismissed Plaintiff's nondisclosure theory because "Plaintiff does not

sufficiently allege knowledge of any product defect on the part of Defendants."  *Punian*, 2015 WL

4967535, at *10–11.  The Court observed that "Plaintiff's factual allegation as to Defendants'

knowledge of the alleged defect consists solely of '[n]umerous complaints filed directly with

Defendants by consumers.'"  *Id.* at *11.  However, the Court noted, "a generalized allegation of

consumer complaints, standing alone, is typically insufficient to show knowledge of a product

defect."  *Id.*  Accordingly, Defendants had no duty to disclose the alleged defect to Plaintiff.

In the SAC, Plaintiff still generally alleges that consumer complaints exist, including on

Twitter, Facebook, and Youtube.  SAC ¶¶ 26, 33–35, 38.  In addition, however, Plaintiff

specifically describes forty consumer complaints on Defendants' website, one complaint posted on

Facebook, and one complaint from Consumerreports.org.  *Id.* ¶¶ 25, 28, 36, 38, Ex. 1.  Plaintiff

also adds allegations that Defendants have admitted, in a court proceeding and in patent filings,

that batteries have the potential to leak, and that two types of internal test likely revealed Duralock

Batteries' potential to leak.  *Id.* ¶¶ 27, 29–32, 39.  Further, Plaintiff alleges that the leakage in

19

1    Duralock Batteries is a "defect" and the batteries are "defective."  *Id.* ¶¶ 24–25, 26–27, 30, 32.

2    Plaintiff does not identify the cause of the defect (for example, a design or manufacturing flaw).

3    *See generally* SAC.

4            Defendants counter that these allegations still fail to sufficiently allege knowledge of a

5    product defect.  Additionally, Defendants claim that Plaintiff must identify the particular defect in

6    Duralock Batteries to comply with Rule 9(b)'s heightened pleading requirements.  Defendants

7    argue that a conclusory allegation that Duralock Batteries are "defective," along with allegations

8    that the batteries have an unspecified potential to leak, does not show a material defect in

9    Duralock Batteries.  Mot. at 2, 7–10.  Having reviewed the new allegations in the SAC, and for the

10   reasons stated below, the Court agrees with Defendants that Plaintiff fails to plausibly allege a

11   material defect in Duralock Batteries.

12            **b.  Plaintiff Fails to Plead Materiality, as Required to Establish A Duty to**
              **Disclose Based on Active Concealment of a Material Fact**

13            As stated above, to plead liability under a nondisclosure theory Plaintiff must allege the

14   existence of a material fact that Defendants had a duty to disclose.  *See Elias III*, 2014 WL

15   493034, at *6.  In order for information to be material, a plaintiff must show that "had the omitted

16   information been disclosed, one would have been aware of it and behaved differently."

17   *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008) (quoting *Mirkin v.*

18   *Wasserman*, 5 Cal. 4th 1082, 1093 (1993)), *aff'd* 322 F. App'x 489 (9th Cir. 2009).  "Materiality

19   . . . is judged by the effect on a 'reasonable consumer.'"  *Falk*, 496 F. Supp. 2d at 1095 (citing

20   *Consumer Advocates*, 113 Cal. App. 4th at 1360); *see also Kosta v. Del Monte Foods, Inc.*, 308

21   F.R.D. 217, 224 (N.D. Cal. 2015) ("Questions of materiality . . . are determined based upon the

22   reasonable consumer standard, not the subjective understandings of individual plaintiffs.").

23            For example, in *Falk*, the court held that failure to disclose a defective speedometer would

24   be material to a reasonable consumer because a faulty speedometer could easily lead to traveling

25   at unsafe speeds and moving-violation penalties.  *Falk*, 496 F. Supp. 2d at 1096.  By contrast, the

26   California Court of Appeal held that the compatibility of a device with certain Internet service

27

28
                                                        20

United States District Court
Northern District of California

1 │ providers was not material to the purchase of the device, when the device provided many other

2 │ functions and many users did not use the Internet on the device. *Eichorn v. Palm, Inc.*, No.

3 │ H030341, 2008 WL 102222, at *6 (Cal. Ct. App. Jan. 10, 2008).

4 │     In order to determine whether Plaintiff adequately pled materiality in the instant case, it is

5 │ helpful to examine exactly what "omitted information" Defendants allegedly failed to disclose,

6 │ and Plaintiff's basis for asserting that information would be material to a reasonable consumer.

7 │ Plaintiff alleges that, had Plaintiff known of Duralock Batteries' "potential to fail, leak and/or

8 │ damage Plaintiff's electronics, she would not have purchased" Duralock Batteries.  SAC ¶ 43.

9 │ The SAC does not further describe Duralock Batteries' "potential to fail, leak, and/or damage

10 │ Plaintiff's electronics."  Plaintiff does not allege any particular likelihood of leakage—for

11 │ example, that Duralock Batteries regularly, often, or usually leak.  *See generally* SAC.  Nor does

12 │ Plaintiff allege that there is a significant, substantial, likely, or particular rate of failure for

13 │ Duralock Batteries.[5]  Notably, Plaintiff does not allege that any of the Duralock Batteries that

14 │ Plaintiff purchased have leaked or damaged any electronic devices.

15 │     Plaintiff does point to forty consumer complaints allegedly posted to Defendants' website,

16 │ on a page labeled "Duracell Coppertop," as evidence that the potential to leak does manifest.

17 │ However, of the forty consumer complaints, 5 are duplicates and 16 clearly relate to other batteries

18 │ sold by Defendants that are not at issue in the SAC.[6]  SAC Ex. 1.  An additional five consumer

19 │

20 │ [5] In Plaintiff's opposition, Plaintiff states that Duralock Batteries have a "substantial probability of
leaking," "regularly leak," and that leakage "manifested on a regular basis."  Opp. at 1, 5, 9.

21 │ However, none of these allegations are in the SAC.  On a motion to dismiss the Court is "confined
by the facts contained in the four corners of the complaint."  *MCI Commc'ns Servs., Inc. v. City of*

22 │ *Eugene, Or.*, 359 F. App'x 692, 697 (9th Cir. 2009).
[6] Two complaints are about batteries in size D.  *See* SAC Ex. 1 (complaints of "teri" and

23 │ "pha1st").  However, the putative class here only includes only purchasers of AA and AAA sized
batteries.  *Id.* ¶¶ 44–45.  Fourteen complaints were either posted to Defendants' website before the

24 │ launch of Duralock in 2012, or refer to batteries that were manufactured before the launch of
Duralock.  *See, e.g., id.* Ex. 1 (complaint of "greggory63" posted December 23, 2011); (complaint

25 │ of "Northernliving" discussing batteries with a ten-year expiration date of Dec. 2014).
    Plaintiff also points to a dispute between Defendants and a "large customer."  *Id.* ¶ 28.

26 │ However, Plaintiff fails to allege that the large customer purchased Duralock Batteries.  The SAC
alleges that the large customer purchased batteries from Defendants "in 2012."  *Id.*  Duralock

27 │ technology was not launched until June 2012.  Further, as noted above, Defendants manufacture a
number of batteries that are not included in the instant lawsuit.  Thus, it is not clear from the

28 │

21

posts are actually positive reviews or related to issues with Duralock Batteries other than leakage. *See, e.g.*, *id.* (post of "simbp215" noting "These are the only batteries that last for at least a year. All other batteries I've tried need replacing every 3–4 months."); (complaint of "Anonymous" stating "I bought these and NONE of them work!").

Of the remaining 14 customer complaints, eight do not identify either the date of purchase, the expiration date on the battery, or the size of the battery. *See, e.g.*, *id.* (complaint of "DisappointedUser1234" stating "Just had a maglite flashlight destroyed from a leaking Copper Top battery"). An additional three complaints do not indicate the date of purchase or the expiration date. For these 13 complaints, it is not clear whether the customers are complaining about Duralock Batteries, or about other batteries sold by Defendants. As noted above, the Duralock Batteries at issue in the SAC are AA and AAA Coppertop batteries with Duralock technology. SAC ¶¶ 44–45. However, Defendants manufacture Coppertop batteries in sizes other than AA and AAA. *See id.* Ex. 1 (noting that Coppertop batteries come in AA, AAA, C, D, and 9-volt sizes). If the customer complaint does not specify the size of the battery, the Court has no basis to infer that the complaint is about Duralock Batteries, rather than batteries in other sizes. Further, Duralock Technology was not introduced until June 1, 2012. *Id.* ¶ 7. Even if the customer complaint was posted after the introduction of Duralock, the Court has no basis to infer that the complaint is about a Duralock Battery unless the complaint indicates when the battery was purchased and identifies the battery size. *See, e.g.*, SAC Ex. 1 (complaint from "undeal" that "The AA and AAA batteries appear to have degraded in quality" and "Two of my remote controls were RUINED by leaking Duracell batteries that were not that old").

Only one of the forty consumer complaints posted on Defendants' website clearly refers to Duralock Batteries leaking. "MikeZ" posts that leakage occurred in some AA batteries labeled "best before 2012" and "guaranteed for 10 years in storage." *See* SAC Ex. 1. Because MikeZ

---

allegations in the complaint that the large customer had a dispute with Defendants over Duralock Batteries. Moreover, Plaintiff fails to allege that any leakage the large customer experienced occurred during the normal and expected use of the batteries. Lastly, Plaintiff does not allege that the large customer's experience is representative of Duralock Batteries' leakage rate.

United States District Court
Northern District of California

refers to AA batteries and to the Duralock guarantee, the Court may reasonably infer that MikeZ experienced leakage with Duralock Batteries.

Plaintiff also points to one complaint posted on Facebook in 2015 and one complaint from Consumerreports.org from 2015, both of which plausibly refer to Duralock Batteries.  *See* SAC ¶ 36 (complaint on Facebook about "DuraLock AA batteries" leaking within three years of purchase); ¶ 38 (complaint on Consumerreports.org indicating "I have used all sizes of Duracell batteries since the 1970s . . . Within the last couple of years, though, I have had numerous issues with these batteries leaking and destroying the appliances in which they were installed").

Thus, the only allegations that indicate the likelihood of Duralock Batteries' potential to leak are one complaint posted to Defendants' website in 2013, one complaint posted on Facebook in 2015, and one complaint from Consumerreports.org from 2015.  Plaintiff asserts that a search of Google, Youtube, and Twitter will reveal numerous additional complaints, but Plaintiff does not specifically identify any of these complaints.  *Id.* ¶¶ 33–35.  However, Defendants allegedly sell hundreds of millions of dollars' worth of batteries per year.  *See id.* ¶ 12.  Three consumer complaints over a two-year period, along with undisclosed other complaints, do not indicate any particular rate or magnitude of Duralock Batteries' potential to leak, particularly in the absence of any allegations in the SAC about the likelihood of leakage.  The Court notes that in *Carlson*, the district court found that the allegations that "numerous" Duralock Batteries leaked over a period of years "without any other data points, such as the total amount of batteries sold, or the leakage rates of comparable batteries sold by other manufacturers" did not support " an inference that any substantial leakage problem existed."  *Carlson*, 2015 WL 6453147, at *7.

Additionally, although Plaintiff alleges that leakage is a "defect" in Duralock Batteries, Plaintiff does not allege that leakage is the result of any systematic design, technical, manufacturing, or other flaw present in all Duralock Batteries.  In fact, Plaintiff does not allege any cause for Duralock Batteries' potential to leak.  Further, Plaintiff does not explain the impact of leakage.  For example, Plaintiff does not allege that any leakage renders Duralock Batteries inoperable.  *See generally* SAC.  Plaintiff does allege that leakage "can damage any device" and

Case No. 14-CV-05028-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

1    that batteries "can leak and ruin electronic devices," *id.* ¶ 21, although there is no allegation

2    indicating how often leakage damages electronic devices.

3         In sum, Plaintiff asserts that Defendants should have disclosed that Duralock Batteries

4    have some potential to leak within a ten-year period, which may result in damaged electronics.

5    *See, e.g.*, *id.* ¶ 2 (noting that Defendants concealed "potential battery leakage" and Duralock

6    Batteries had "an undisclosed likelihood of premature leakage and corrosion"); ¶ 20 (Defendants

7    failed to disclose that batteries "may leak when used or stored in a normal and expected manner");

8    ¶ 27 (Defendants' counsel acknowledged that "all alkaline batteries have the potential to leak").

9    Plaintiff argues that this disclosure would be material to her, and to a reasonable consumer. *See*

10   *id.* ¶¶ 43, 76–77.

11        Examining similar allegations of leakage in Duralock Batteries, the *Carlson* court found

12   that the allegations failed to sufficiently plead a defect that would be material to a reasonable

13   consumer:

> The complaint contains only general allegations that Duracell batteries "leak" (or
> had the "potential to" leak) under certain conditions.  It includes no allegations that
> state the extent of the leakage problem or even that the problem was significant,
> substantial, or widespread.  The fact that some small percentage of the products
> may fail, without more, is not a fact that is likely to influence an objectively
> reasonable customer . . . . At a minimum, without a sense of the magnitude of the
> issue (Was it one battery in a billion? One in two?), it is impossible to ascertain
> whether the "potential to fail" was material.
>
> . . .
>
> Plaintiffs contend that because Duracell charges a "premium price compared to
> similarly sized AA and AAA batteries of competitors' products," reasonable
> consumers would be dissuaded from purchasing its batteries upon knowledge of
> any leakage problem.  Again, without any information whatsoever as to the
> likelihood of leakage (either in Duracell batteries or competing batteries), a
> reasonable consumer would not have any basis on which to determine that
> Duracell's "premium price" was unjustified as compared to that of its competitors.
> Thus, if he or she was otherwise inclined to purchase Duracell batteries, he or she
> would not be "influenced . . . not to enter into the transaction" by the bare
> allegations contained within the complaint.  That plaintiffs apparently would have
> been so influenced is not sufficient to state a claim under [Massachusetts law]. . . .
> In short, the complaint fails to allege sufficient facts to support an inference that
> any relevant leakage problem—or, by extension, the nondisclosure of such a
> problem—was "material."

*Carlson*, 2015 WL 6453147, at *7.  The Court finds the *Carlson* court's reasoning persuasive, for

United States District Court
Northern District of California

24

1  the following reasons.

2      First, Plaintiff cites no case—and the Court is aware of none—where a court has found that

3  such an unspecified potential to fail suffices to allege a material product defect.  Rather, as

4  Defendants point out, cases finding that a company has a duty to disclose a product defect have

5  identified a particular design or manufacturing defect and described the connection between the

6  defect and the harm to the plaintiff.  *See, e.g.*, *Wilson*, 668 F.3d at 1144–45 ("As Plaintiffs do not

7  plead any facts indicating how the alleged design defect, *i.e.,* the loss of the connection between

8  the power jack and the motherboard, causes the Laptops to burst into flames, the District Court did

9  not err in finding that Plaintiffs failed to plausibly allege the existence of an unreasonable safety

10  defect."); *Elias III*, 2014 WL 493034, at *8 (noting that the plaintiff alleged that a computer part

11  was inadequate, and that the "inadequacy led to the performance and safety issues Plaintiff

12  identifies"); *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM (PJWx), 2014 WL

13  5017843, at *1 (C.D. Cal. Oct. 3, 2014) (alleging that a mechanical water pump was defectively

14  designed, manufactured, and installed, and stating that the amount of stress on the two sealed ball

15  bearings exceeds the engineering limitations).  Additionally, courts have recognized that "the duty

16  to disclose in product defect cases is narrower than in other areas," because "warranty law

17  essentially covers the same terrain."  *Beltran v. Avon Prods., Inc.*, No. SACV 12-02502-

18  CJC(ANx), 2012 WL 12303423, at *5 (C.D. Cal. Sept. 20, 2012); *see also Kowalsky v. Hewlett-

19  Packard Co.*, 771 F. Supp. 2d 1156, 1160 (N.D. Cal. 2011) (distinguishing "product defect"

20  claims from other types of claims).  In the instant case, Plaintiff has not identified any cause for

21  Duralock Batteries' potential to leak within ten years, or alleged the existence of a design or

22  manufacturing defect in Duralock Batteries.

23      Second, "[i]n order to be deceived, members of the public must have had an expectation or

24  an assumption" about the matter in question.  *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th

25  1255, 1275 (2006).  In *Bardin*, for example, the plaintiffs alleged that Daimlerchrysler Corp.

26  ("DCC") produced certain cars with exhaust manifolds made of tubular steel, rather than cast iron.

27  *Id.* at 1261–62.  The plaintiffs further alleged that the industry standard was to use cast iron

28

Case No. 14-CV-05028-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    exhaust manifolds, and that tubular steel cracked and failed earlier than cast iron. *Id.* The

2    plaintiffs asserted that DCC concealed these material facts from the public, who were likely to be

3    deceived about the quality, performance, and durability of DCC's exhaust manifolds. *Id.* at 1275.

4    The California Court of Appeal held that plaintiffs did not state a claim for fraudulent omission

5    under the CLRA or the fraudulent prong of the UCL because the complaint did not allege "(1)

6    members of the public had any expectation or made any assumptions that DCC's exhaust

7    manifolds would be made from cast iron, as opposed to tubular steel, (2) the public had any

8    expectation or made any assumptions regarding the life span of the exhaust manifold of a DCC

9    vehicle, or (3) facts showing DCC had made any representation of any kind, much less any

10   misrepresentation, regarding its vehicles." *Id.*

11          By contrast, in *Falk*, the district court held that the plaintiffs did plead a material defect

12   when the plaintiffs alleged that "they did, in fact, have expectations about the product in question."

13   *Falk*, 496 F. Supp. 2d at 1096. The *Falk* court noted that the plaintiffs alleged a reasonable

14   consumer would expect a speedometer to last for the life of the vehicle, and "[c]ommon

15   experience supports plaintiffs' claim that a potential car buyer would view as material a defective

16   speedometer." *Id.* Thus, the *Falk* court held that the plaintiffs sufficiently pled a material defect

17   that should have been disclosed to consumers. *Id.* at 1097.

18          Here, Plaintiff's only allegation regarding customer expectations is that the Duralock

19   guarantee misleads consumers into believing that Duralock Batteries have no potential to leak for

20   ten years. As discussed above, however, the Duralock guarantee is not a promise that Duralock

21   Batteries have no potential to leak for ten years. Rather, the Duralock guarantee is an express

22   warranty. In other words, a reasonable consumer would not understand the Duralock guarantee as

23   a representation that a product has no potential to fail for ten years, but as a promise to repair,

24   replace, or refund a failed product. *See Hoey*, 515 F. Supp. 2d at 1104 ("Plaintiffs seek to

25   bootstrap Sony's express warranty into a representation that the VAIO notebooks are defect-free

26   . . . . Nothing in the warranty expressly or impliedly warrants that the computer will be defect-free

27   either during the warranty period or thereafter."). Plaintiff provides no other allegations regarding

28

                                                   26

consumer expectations about Duralock Batteries' potential to fail.  Accordingly, Plaintiff fails to allege that Duralock Batteries' unspecified potential to leak contravenes consumer expectations or that Defendants' failure to disclose the potential to leak is likely to deceive consumers.  *See Bardin*, 136 Cal. App. 4th at 1275.

In sum, Plaintiff has not alleged the cause of any defect in Duralock Batteries, the impact of battery leakage on the battery, the likelihood that Duralock Batteries will leak, that consumers had any expectations about the leakage rate or potential to fail of Duralock Batteries, or that any of Plaintiff's Duralock Batteries have failed.  This Court agrees with the *Carlson* court that such allegations are insufficient to plausibly allege that Duralock Batteries' potential to leak is a material defect.  *See Carlson*, 2015 WL 6453147, at *7; *cf. Faigman v. Cingular Wireless, LLC*, No. C 06-04622 MHP, 2007 WL 708554, at *5 (N.D. Cal. Mar. 2, 2007) (determining plaintiffs' materiality allegations failed as a matter of law).  Because the Court concludes that Plaintiff fails to plead materiality, Plaintiff fails to plead that Defendants had a duty to disclose based on the active concealment of a material fact.  *See Falk*, 496 F. Supp. 2d at 1097 (listing five elements that Plaintiff must plead for active concealment).

### c.   Plaintiff Fails To Plead Active Concealment, As Required To Establish A Duty to Disclose Based on Active Concealment of a Material Fact

Although the Court need not address the other factors necessary to a duty to disclose, the Court notes that neither party even addresses one of the elements needed to show a duty to disclose based on the active concealment of a material fact: "the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff."  *Falk*, 496 F. Supp. 2d at 1097.  Unless the defendant actively concealed the material fact, the defendant has no duty to disclose and thus no liability for a fraudulent omission.  *See id.*

Active concealment requires Plaintiff to allege "affirmative acts on the part of the defendants in hiding, concealing or covering up the matters complained of."  *Lingsch v. Savage*, 213 Cal. App. 2d 729, 734 (1963).  "Mere nondisclosure does not constitute active concealment."  *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013).  Thus, courts require more

27

than "facts showing that the defendant knew of the alleged defect and did nothing to fix it or alert customers to its existence." *Elias III*, 2014 WL 493034, at \*10.  For example, in *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS (ANx), 2013 WL 6477821, at \*8 (C.D. Cal. Nov. 8, 2013), the court held that the defendant's nondisclosure of a defect in dishwashers, combined with "allegations that [d]efendant denied the defect when [p]laintiffs called to request repairs or replacement dishwashers . . . [was] sufficient to allege active concealment."  By contrast, the district court in *Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN (RBB), 2014 WL 1664235, at \*5–\*6 (S.D. Cal. Apr. 18, 2014), found that plaintiff failed to plead active concealment when plaintiff alleged only that the defendant was aware of the defect yet failed to recall the product, place warnings on the packaging, or otherwise meaningfully notify customers.

Plaintiff's allegations are similar to the allegations found insufficient in *Czuchaj*.  In the instant case, Plaintiff alleges only that "Defendants concealed from consumers the propensity for premature leakage and corrosion, by failing to disclose it on Duracell Coppertop packaging or related advertising materials."  SAC ¶ 57; *id.*¶ 2 ("Plaintiff alleges that Defendants concealed and misrepresented material facts concerning potential battery leakage . . . .").  However, as noted above, "failing to disclose" a defect, alone, does not establish that Defendants actively concealed the defect.  *See Herron*, 924 F. Supp. 2d at 1176.  Plaintiff offers no "affirmative acts on the part of the defendants in hiding, concealing or covering up" the potential for leakage.  *Lingsch*, 213 Cal. App. 2d at 734.  For example, Plaintiff does not plead that Defendants affirmatively denied the alleged defect or refused to replace or refund any of Plaintiff's Duralock Batteries.  *See Apodaca*, 2013 WL 6477821.  Thus Plaintiff fails to allege active concealment.

Plaintiff's allegations of a duty to disclose thus fail on two bases: materiality and active concealment.  *See Falk*, 496 F. Supp. 2d at 1097 (noting that materiality and active concealment are both required to plead a duty to disclose based on active concealment of a material fact).  As noted above, an omission is actionable under the FAL, the CLRA, and the fraudulent prong of the UCL, only if "an omission [is] of a fact the defendant was obliged to disclose." *Sony Gaming Networks*, 996 F. Supp. 2d at 991.  As Plaintiff has not pled a duty to disclose, Plaintiff fails to

Case No. 14-CV-05028-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

state a claim for nondisclosure under the FAL, the CLRA, or the fraudulent prong of the UCL.

### 4.  Leave to Amend for Plaintiff's Claims Under the FAL, CLRA, and the Fraudulent Prong of the UCL

The Court now turns to whether to grant Plaintiffs leave to amend their causes of action under the FAL, the CLRA, and the fraudulent prong of the UCL.  The Court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *See Leadsinger*, 512 F.3d at 532 (alteration in original).

In the instant case, the Court concludes above that Defendants did not make affirmative misrepresentations as a matter of law because the statements identified by Plaintiff are either not likely to mislead a reasonable consumer or are nonactionable puffery.  Thus, any amendment would be futile.  *See id.*  Additionally, the Court previously dismissed Plaintiff's nondisclosure claim because Plaintiff failed to sufficiently allege that Defendants knew of the alleged defect, and thus that Defendants had a duty to disclose the omitted statement.  The Court's previous order stated that "failure to cure the deficiencies identified in this Order[] will result in a dismissal with prejudice."  *Punian*, 2015 WL 4967535, at *15.  Plaintiff's SAC has failed to cure the deficiencies in Plaintiff's nondisclosure claim.  Giving Plaintiff an additional opportunity to amend the complaint would be futile, cause undue delay, and unduly prejudice Defendants by requiring Defendants to file repeated motions to dismiss.  Accordingly, the Court GRANTS dismissal of Plaintiff's claims under the FAL, the CLRA, and the fraudulent prong of the UCL with prejudice. *See Leadsinger*, 512 F.3d at 532.

### C.  Plaintiff's Claims under the Unlawful and Unfair Prongs of the UCL

The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (quotation marks and citations omitted).  By proscribing "any unlawful" business practice, Cal. Bus. & Prof. Code § 17200, the UCL permits

29

United States District Court
Northern District of California

injured consumers to "borrow" violations of other laws and treat them as unfair competition that is independently actionable. *Cel-Tech*, 20 Cal. 4th at 180. Plaintiff's claim under the unlawful prong of the UCL is premised on violations of the FAL and CLRA. *See* SAC ¶ 57. Because the Court finds that Plaintiff did not plausibly allege any statutory violations, the Court also finds that Plaintiff fails to plausibly allege violation of the unlawful prong of the UCL. Further, because the Court has denied Plaintiff leave to amend the FAL and CLRA claims, amendment of Plaintiff's claim under the unlawful prong of the UCL would be futile. Consequently, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim based on the unlawful prong of the UCL with prejudice. *See Leadsinger*, 512 F.3d at 532.

The unfair prong of the UCL prohibits a business practice that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."[7] *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). "[A]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Berryman*, 152 Cal. App. 4th at 1555. Here, Plaintiff's cause of action under the unfair prong of the UCL overlaps entirely with Plaintiff's claims under the FAL and the CLRA. Plaintiff alleges that Defendants harmed Plaintiff by concealing the potential of Duralock Batteries to leak. SAC ¶ 63. Above, the Court found that Plaintiff has not demonstrated that Defendants made material omissions about the potential of Duralock Batteries to leak that are likely to mislead a reasonable consumer. Accordingly, Plaintiff

---

[7] California law is currently unsettled with regard to the standard applied to consumer claims under the unfair prong of the UCL. *See Davis*, 691 F.3d at 1169 (citing *Lozano*, 504 F.3d at 735–36). The California Supreme Court has rejected the traditional balancing test for UCL claims between business competitors and instead requires that claims under the unfair prong be "tethered to some legislatively declared policy." *See Cel-Tech*, 20 Cal.4th at 186. However, the *Cel-Tech* court explicitly limited its holding to claims alleging unfairness to business competitors, and California courts are divided as to the correct test to apply to consumer actions. *See Lozano*, 504 F.3d at 735–36. Pending resolution of this issue by the California Supreme Court, the Ninth Circuit has approved the use of either the balancing or the tethering tests in consumer actions. *Id.* In this case, because Plaintiff does not identify any specific legislative policy to which his claims might be tethered, the Court will apply only the traditional balancing test. *See* SAC ¶¶ 61–66 (alleging that harm to Plaintiff outweighs any utility to Defendants).

Case No. 14-CV-05028-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1  has not pled a "substantial" consumer injury.  *See id.*  As with Plaintiff's FAL and CLRA claims,

2  the Court concludes that permitting Plaintiff leave to amend will be futile, cause undue delay and

3  undue prejudice to Defendants.  Accordingly, the Court GRANTS Defendants' motion to dismiss

4  Plaintiff's claim based on the unfair prong of the UCL with prejudice.

5      **D.  Plaintiff's Claim for Unjust Enrichment**

6         To plead a cause of action for unjust enrichment, Plaintiffs must allege "receipt of a benefit

7  and unjust retention of the benefit at the expense of another."  *Wood v. Motorola Mobility, Inc.*,

8  No. C-11-04409-YGR, 2012 WL 892166, at *10 (N.D. Cal. Mar. 14, 2012).  If a plaintiff's

9  underlying causes of action fail, a "claim for unjust enrichment cannot stand alone as an

10  independent claim for relief."  *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL

11  5069144, at *5 (N.D. Cal. Dec. 17, 2009) (citing *Jogani v. Superior Court*, 165 Cal. App. 4th 901,

12  911 (2008)); *see also Sanders v. Apple Inc.*, No. C 08-1713, 2009 WL 150950, at *9 (N.D. Cal.

13  Jan.21, 2009) (noting that an "[unjust enrichment] claim will depend upon the viability of the

14  Plaintiffs' other claims").  In the instant case, Plaintiff's cause of action for unjust enrichment is

15  premised on the same factual allegations underlying Plaintiff's causes of action under the FAL, the

16  CLRA, and the UCL.  *See* SAC ¶¶ 95–101.  Accordingly, because the Court dismisses Plaintiff's

17  claims under the FAL, the CLRA, and the UCL with prejudice, the Court concludes that

18  permitting Plaintiff leave to amend will be futile, cause undue delay and undue prejudice to

19  Defendants.  The Court GRANTS Defendants' motion to dismiss the unjust enrichment cause of

20  action with prejudice.

21      **E.  Plaintiff's Claim for Breach of Implied Warranty of Fitness for a Particular Purpose**

22         To state a claim for breach of implied warranty of fitness for a particular purpose, a

23  plaintiff must allege "(1) the purchaser at the time of contracting intends to use the goods for a

24  particular purpose, (2) the seller at the time of contracting has reason to know of this particular

25  purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for

26  the particular purpose, and (4) the seller at the time of contracting has reason to know that the

27  buyer is relying on such skill and judgment."  *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1021

28   

31

United States District Court
Northern District of California

1    (N.D. Cal. 2014) (quoting *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985)); *see also* Cal. Com.

2    Code § 2315 ("Implied warranty; fitness for particular purpose").  A particular purpose differs

3    from an ordinary purpose in that "it envisages a specific use by the buyer which is peculiar to the

4    nature of his business whereas the ordinary purposes for which goods are used are those envisaged

5    in the concept of merchantability and go to uses which are customarily made of the goods in

6    question." *Frenzel*, 76 F. Supp. 3d at 1021 (quoting *Am. Suzuki Motor Corp. v. Superior Court*,

7    37 Cal. App. 4th 1291, 1295 n.2 (1995)).

8         The Court previously dismissed this claim because Plaintiff failed to identify any particular

9    purpose for her use of Duralock Batteries, and failed to explain how that particular purpose

10   differed from the ordinary purpose for Duralock Batteries.  *Punian*, 2015 WL 4967535, at \*14–

11   \*15.  The Court stated that "failure to cure the deficiencies identified . . . will result in a dismissal

12   with prejudice." *Id.* at \*15.  In the SAC, Plaintiff alleges that her intended purpose in purchasing

13   Duralock Batteries was "the possible normal use" of the batteries "for ten years."  SAC ¶ 104.

14   Plaintiff argues that this particular purpose is different from the ordinary purpose of batteries

15   where no ten-year guarantee is offered.  Opp. at 17.

16        As before, the Court finds that Plaintiff fails to allege that she intended to use Duralock

17   Batteries for a particular purpose.  To state a claim, Plaintiff's particular purpose must differ from

18   the ordinary purpose for Duralock Batteries.  *See Frenzel*, 76 F. Supp. 3d at 1021 (noting that a

19   particular purpose is "a specific use by the buyer which is peculiar to the nature of his business").

20   In the instant case, Plaintiff intends "the possible normal use" of Duralock Batteries for the

21   guarantee period.  SAC ¶ 104.  This is not a particular purpose, but rather the ordinary purpose for

22   which Duralock Batteries are customarily purchased.  *See Frenzel*, 76 F. Supp. 3d at 1021 (finding

23   that plaintiff's intent to use a product with an advertised 10-day battery life as "a fitness and

24   lifestyle tracker with a . . . 10 day battery life" is the ordinary purpose for which the product is

25   purchased); *Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at \*8 (N.D.

26   Cal. Mar. 11, 2014) ("[P]laintiff has identified no 'particular purpose' for which she purchased the

27   washing machine.  She purchased it to wash her laundry, which is the ordinary purpose of a

28

Case No. 14-CV-05028-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

1   washing machine.").

2          Because Plaintiff fails to allege a particular purpose, Plaintiff fails to state a claim for

3   breach of an implied warranty of fitness for a particular purpose.  *See Kent*, 2010 WL 2681767, at

4   *5 ("Plaintiffs have not alleged that they used the computers . . . for anything other than their

5   ordinary purpose.  Thus, Plaintiffs have not stated a claim for a breach of an implied warranty for

6   a particular purpose." (internal citations omitted)).  The Court warned Plaintiff that failure to

7   allege a particular purpose would result in this claim being dismissed with prejudice.  *Punian*,

8   2015 WL 4967535, at *15.  Accordingly, this claim is DISMISSED with prejudice.  *See*

9   *Leadsinger*, 512 F.3d at 532 (noting leave to amend may be denied when a party fails to cure

10   deficiencies with amendments previously allowed).

11   **IV.    CONCLUSION**

12          For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's

13   SAC with prejudice.

14   **IT IS SO ORDERED.**

15

16   Dated:  March 15, 2016

17                                                    _____

18                                                    LUCY H. KOH
                                                     United States District Judge
19

20

21

22

23

24

25

26

27

28

33

United States District Court
Northern District of California